# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

TAJ K. ROGERS,

                    Plaintiff,

        v.

POCONO MOUNTAIN EAST HIGH
SCHOOL, et al.,

                    Defendants.

CIVIL ACTION NO. 3:21-CV-02072

(MEHALCHICK, M.J.)

## MEMORANDUM

Presently before the Court is a motion to dismiss for failure to state a claim brought by

Defendants Pocono Mountain School District ("School District"); Pocono Mountain East

High School ("High School");[1] Dr. Elizabeth Robison ("Robison"), individually and in her

capacity as Superintendent at Pocono Mountain School District; Dr. Marybeth Gustafson

("Gustafson"), individually and in her capacity as Assistant Superintendent of Special

Education at Pocono Mountain School District; Kevin Lesoine ("Lesoine"), individually and

in his capacity as a teacher at Pocono Mountain East High School; Daniel Higgins

("Higgins"), individually and in his capacity as the Principal of Pocono Mountain East High

---

[1] Defendants argue that the High School is inappropriately named as a defendant and should be dismissed with prejudice. (Doc. 9, at 8 n.1). Under the Pennsylvania Public School Code, "school districts in this Commonwealth shall be, and hereby are vested as, bodies corporate, with all necessary power to enable them to carry out the provisions of this act," including the power to sue and be sued. 24 P.S. § 2-211. Individual schools, like school boards of directors, are excluded from the definition of "political subdivision," which is limited to the following: "any county, city, borough, incorporated town, township, school district, vocational school district, country institution district or municipal or other local authority." Pennsylvania Rule of Civil Procedure 76. "Because an individual public school is not included in the Rule 76 definition of 'political subdivision,' there does not appear to be any authority which would support a suit against the [High School]." *C.T. by Smith v. Delaplaine McDaniel Sch.*, No. 17-CV-4463, 2018 WL 1072385, at *4 (E.D. Pa. Feb. 26, 2018); *see* Pennsylvania Rule of Civil Procedure 2102(b). Rogers has not offered any argument to the contrary. Therefore, the claims against the High School will be dismissed with prejudice.

School; and Jerusalem Strickland ("Strickland"), individually and in his capacity as a staff member of Pocono Mountain East High School (collectively, "Defendants"). (Doc. 8). On December 9, 2021, Plaintiff Taj K. Rogers ("Rogers") initiated this action by filing the complaint pursuant to the Americans with Disabilities Act ("ADA"), the Individuals with Disabilities Education Act ("IDEA"), 42 U.S.C. § 1983, and various state law claims. (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 7). For the following reasons, Defendants' motion to dismiss shall be GRANTED. (Doc. 8).

## I.   BACKGROUND AND PROCEDURAL HISTORY

On December 9, 2021, Rogers filed the complaint against Defendants. (Doc. 1). In the complaint, Rogers alleges that he is a nineteen-year-old disabled individual with special needs who has been diagnosed with Conduct Disorder, Attention Deficient/Hyperactivity Disorder ("ADHD"), and Opposition Defiance Disorder. (Doc. 1, ¶¶ 7, 21). Rogers is a former student of the High School who is eligible for special education services as provided by the IDEA. (Doc. 1, ¶¶ 23, 25). Rogers was identified as having a specific learning disability in reading fluency and written expression, and received services in an emotional support classroom. (Doc. 1, ¶ 24). Rogers was also the recipient of an Individualized Education Program ("IEP"), which required Defendant Strickland, a staff member of the School District, to escort Rogers in all areas at the High School and to transition Rogers to his therapeutic emotional support classroom. (Doc. 1, ¶¶ 32-39). In addition, the School District allowed Rogers to have earbud-style headphones as an accommodation based on his disabilities. (Doc. 1, ¶ 47).

The events giving rise to this action follow. On June 14, 2018, Rogers arrived at the High School and did not see Strickland. (Doc. 1, ¶¶ 40-41). A staff member instructed Rogers

to proceed to his emotional support classroom, and he thereafter did so with another classmate. (Doc. 1, ¶¶ 43-44). While walking in the hallway, Rogers was wearing his earbud-style headphones when Lesoine approached Rogers and asked him to remove his headphones. (Doc. 1, ¶¶ 50-63). Rogers did not know that Lesoine was a teacher and ignored his request. (Doc. 1, ¶¶ 53-63). Lesoine continued to follow Rogers and again requested that Rogers remove the headphones. (Doc. 1, ¶¶ 53-63). After Rogers refused to remove his headphones, a verbal and physical altercation ensued. (Doc. 1, ¶ 66). As a result of that altercation, Rogers was charged with aggravated assault and related offenses. (Doc. 1, ¶¶ 77-78).

Rogers's complaint raises nine state and federal claims related to alleged constitutional violations by Defendants: (1) Count I – Violation of ADA against all Defendants; (2) Count II – Violation of IDEA, 20 U.S.C. § 1440, *et seq.*, against all Defendants; (3) Count III – 42 U.S.C. § 1983, Violation of Fourth and Fourteenth Amendments against all Defendants; (4) Count IV – 42 U.S.C. § 1983, Equal Protection against all Defendants; (5) Count V – *Monell* claim under 42 U.S.C. § 1983 against Pocono Mountain School District; (6) Count VI – Intentional Infliction of Emotional Distress ("IIED") against all Defendants; (7) Count VII – Breach of Fiduciary Duty against all Defendants; (8) Count VIII – Negligence against all Defendants; (9) Count IX – Violation of Pennsylvania Human Relations Act ("PHRA") against all Defendants. (Doc. 1, at 13-38). For relief, Rogers requests compensatory and punitive damages, as well as attorney's fees. (Doc. 1, at 38).

On February 11, 2022, Defendants filed the motion to dismiss, as well as a brief in support. (Doc. 8; Doc. 9). Rogers filed a brief in opposition on March 28, 2022. (Doc. 15). The motion to dismiss has been fully briefed and is ripe for disposition. (Doc. 8; Doc. 9; Doc.

15).

## II.   MOTION TO DISMISS STANDARDS

### A.   RULE 12(B)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When a party moves to dismiss under more than one Rule 12 ground, the Court must first consider the Rule 12(b)(1) challenge, 'because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot.' " *A.D. v. Haddon Heights Bd. of Educ.*, 90 F.Supp.3d 326, 334 (D.N.J. 2015), *aff'd*, 833 F.3d 389 (3d Cir. 2016) (citation omitted). Here, Defendants argue that Rogers failed to exhaust administrative remedies with respect to Counts I, II, IV, and IX. (Doc. 9, at 12). "A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." *Vieth v. Pennsylvania*, 188 F. Supp. 2d 532, 537 (M.D. Pa. 2002). The failure to exhaust administrative remedies is a jurisdictional issue and the appropriate device to raise this issue is a motion to dismiss under Rule 12(b)(1). *See Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271 (3d Cir. 2014). A Rule 12(b)(1) dismissal is not a judgment on the merits, but only a determination that the court lacks the authority to hear the case. *Swope v. Central York Sch. Dist.*, 796 F. Supp. 2d 592, 599 (M.D. Pa. 2011).

Rule 12(b)(1) challenges may be "facial" or "factual." *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack challenges whether jurisdiction has been properly pled and requires the court to "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing

*Mortensen*, 549 F.2d at 891.) Conversely, when a defendant sets forth a factual attack on subject-matter jurisdiction, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case. . . 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.' " *Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891).

In this case, Defendants challenge Rogers's alleged failure to exhaust administrate remedies and, thus, present a factual attack on subject-matter jurisdiction. *See Rohrbaugh by & through Rohrbaugh v. Lincoln Intermediate Unit*, 255 F.Supp.3d 589, 592 (M.D. Pa. 2017). As a result, the Court will weigh the allegations in the complaint without presuming truthfulness in order to determine the merits of the jurisdictional claim.

## B. RULE 12(B)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint are true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although a court must accept the factual allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court

need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III.   DISCUSSION

Defendants move to dismiss the claims raised in Rogers's complaint pursuant to Rule 12(b)(1) and (6). (Doc. 8). Specifically, Defendants argue that (1) the Court lacks subject-matter jurisdiction over Counts I, II, IV, and IX; (2) Rogers fails to state a cause of action under the ADA; (3) Rogers fails to establish *Monell* liability under 42 U.S.C. § 1983; (4) Counts VI, VII, VIII, and IX are barred by the Political Subdivision Tort Claims Act; (5) Rogers is not entitled to punitive damages; and (6) individual defendants are shielded by the doctrine of qualified immunity. (Doc. 9).

### A.   COUNTS I, II, IV, AND IX – IDEA-BASED CLAIMS

Defendants argue that "[t]he Court lacks subject-matter jurisdiction over Counts I, II, IV, and IX because [Rogers] failed to exhaust his administrative remedies available to him under the IDEA." (Doc. 9, at 12). Specifically, Defendants assert that Counts I, II, IV, and

IX "are based on [Rogers]'s specific educational accommodations and, thus, these are FAPE-based claims required to be exhausted under the IDEA that must be dismissed." (Doc. 9, at 15). In response, Rogers argues that he was not required to exhaust administrative remedies under the IDEA because the complaint details intentional discrimination and negligence claims, not a denial of Rogers's right to a free appropriate public education ("FAPE"). (Doc. 15, at 12-13). On the face of the complaint, Rogers seeks compensatory and punitive damages, as well as attorney's fees under the ADA, the IDEA, Section 1983, and Pennsylvania law. (Doc. 1).

The IDEA, 20 U.S.C. § 1400 *et seq.*, ensures that all children with disabilities receive a FAPE. Section 1415(l) of the IDEA provides that "[n]othing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act, or other Federal laws." 20 U.S.C. § 1415(l). However, this section also requires a person to first exhaust the IDEA's administrative procedures before suing under the ADA or Section 504. 20 U.S.C. § 1415(l). The Supreme Court addressed the question in *Fry v. Napolean Cmty. Schs.*, 137 S. Ct. 743 (2017). There, the Court held that "exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee—what the [IDEA] calls a 'free appropriate public education.' " *Fry*, 137 S. Ct. at 748. The examination of a plaintiff's complaint should "consider substance, not surface." *Fry*, 137 S. Ct. at 755. The Third Circuit has interpreted *Fry*'s use of the word "gravamen" to mean that "a court must review both the entire complaint and each claim to determine if the plaintiff seeks relief for the denial of a FAPE." *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 133 (3d Cir. 2017) (dismissing for lack of subject-matter jurisdiction where student's claims were subject to exhaustion). Whether a

complaint uses particular terms or labels, such as FAPE or IEP, is not material. *Fry*, 137 S. Ct. at 755. Rather, Section 1415(l) "requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Fry*, 137 S. Ct. at 755.

The Supreme Court stated that two hypothetical questions are instructive for determining whether the gravamen of the complaint concerns the denial of a FAPE or a disability-based discrimination claim:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or child in some other) has a viable claim.

> *Fry*, 137 S. Ct. at 756.

The Supreme Court illustrated a situation that is instructive in this case: a teacher, "acting out of animus or frustration, strikes a student with a disability." *Fry*, 137 S. Ct. at 756 n.9. While a lawsuit under a statute other than the IDEA could relate to the student's education, "the substance of the plaintiff's claim is unlikely to involve the adequacy of special education—and thus is unlikely to require exhaustion." *Fry*, 137 S. Ct. at 756 n.9. In that situation, a child or adult could file the same type of suit if the action took place in a different public facility. *Fry*, 137 S. Ct. at 756 n.9.

In this case, Counts I and IX of the complaint assert that Defendants' failure to provide accommodations that were tailored to meet Rogers's special needs resulting from his

disability, including the permission to wear headphones and the IEP for an escort, violated the ADA and the PHRA. (Doc. 1, at 13-18, 37-38). Count II claims Defendants violated Section 1415(k)(6)(b) of the IDEA because "[a]t no time following this incident, which occurred on school property during school hours, did the Defendants forward [Rogers]'s documentation regarding his IEP and trauma-based issues to authorities, which is a violation of federal law under the IDEA." (Doc. 1, ¶ 116). Finally, Count IV of the complaint asserts a Fourteenth Amendment Equal Protection claim under 42 U.S.C. § 1983, arguing that Defendants treated Rogers differently than other similarly situated persons by not forwarding the documentation regarding his IEP and trauma-based issues to authorities. (Doc. 1, ¶ 150-53).

Applying the *Fry* framework, Rogers argues that Counts I, II, IV, and IX should not be dismissed and that administrative exhaustion is nevertheless futile. (Doc. 15, at 16-20). Rogers contends that if the alleged conduct had occurred in a public facility, he could assert a violation of the ADA because he was wearing headphones as an accommodation for his disability when the alleged conduct occurred. (Doc. 15, at 17). In addition, Rogers states that "any employee or visitor could advance this same grievance if that person was followed, harassed, and detained by a school member because they were wearing earbuds to accommodate their disability." (Doc. 15, at 17). Rogers argues that Counts I, II, IV, and IX pertain to Defendants' failure to provide him accommodations based on his disability which have resulted in him being suspended and criminally charged in violation of his civil rights . . . ." (Doc. 15, at 17-18). Rogers claims that these allegations "have nothing to do with a denial of FAPE, or any deficiency in [Rogers]'s IEP." (Doc. 15, at 18-19).

The Court's review of Rogers's complaint reveals that Rogers's alleged injuries in

Counts I, II, IV, and IX of the complaint "comprise [of claims that [seek] relief under the IDEA, as opposed to the sort of claim[s] that a student could bring against a public facility that was not a school or that a nonstudent could bring for alleged wrongs in a school setting." *S.D. by A.D. v. Haddon Heights Bd. of Educ.*, 722 F. App'x 119, 126 (3d Cir. 2018) (exhaustion required because substance of plaintiffs' discrimination claims concerned the denial of a FAPE to student where Defendants allegedly failed to provide instruction tailored to meet student's special needs resulting from his disability). Rogers would not be able to bring the same claims if the same conduct occurred in a public facility because another public facility would not be obligated to comply with his education-related accommodations. Furthermore, Rogers's allegations are related to his education-related disability accommodations that would not be afforded to an adult at the school. Regarding Rogers's equal protection claim in Count IV, the Supreme Court has noted:

> [A]llowing an equal protection claim without requiring exhaustion under the predecessor statute, would not only "render superfluous most of the detailed procedural protections outlined in the statute, but, more important, it would also run counter to Congress' view that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education."
>
> *Komninos by Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994) (quoting *Smith v. Robinson*, 468 U.S. 992, 1011-12 (1984)).

Therefore, Rogers's claims in Counts I, II, IV, and IX of the complaint could have been remedied through the IDEA's administrative process and are subject to exhaustion. *See Wellman*, 877 F.3d at 133.

Rogers argues that if the Court finds that the IDEA exhaustion requirements do apply, an exception should be applied. The Third Circuit has recognized four exceptions where exhaustion would be unnecessary, including situations where "(1) exhaustion would be futile

or inadequate; (2) the issue presented is purely a legal question; (3) the administrative agency cannot grant relief; and (4) exhaustion would cause severe or irreparable harm.*" D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 275 (3d Cir. 2014) (citing *Komninos*, 13 F.3d at 778). The futility and inadequate relief exceptions apply where plaintiffs " 'allege systemic legal deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even addressed) through the administrative process.' " *D.A. v. Pleasantville Sch. Dist.*, No. 07-CV-4341, 2009 WL 972605, at *5 (D.N.J. Apr. 6, 2009) (quoting *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 89 (3d Cir. 1996)). Courts must consider whether enforcing the exhaustion requirement would serve its purposes, namely "developing the record for review on appeal, encouraging parents and the local school district to work together . . . , and allowing the education agencies to apply their expertise and correct their own errors." *Batchelor*, 759 F.3d at 275 (internal citations omitted).

Here, Rogers argues that no administrative remedy is available under the IDEA because he is only seeking monetary damages and has suffered non-educational injuries, including criminal prosecution. (Doc. 15, at 19). Furthermore, Rogers makes the unsupported, conclusive assertion that "[t]he issues presented in this case are legal in nature." (Doc. 15, at 19). Lastly, Rogers avers that because he "is 19 years old and out of High School," "[r]equiring exhaustion under the IDEA would cause a dismissal of [Rogers]'s case." (Doc. 15, at 20). Thus, Rogers concludes that exhaustion would cause irreparable harm and is futile. (Doc. 15, at 19-20). The Court finds that Rogers's conclusive assertions for why the Court should apply an exception to the IDEA exhaustion requirement are not persuasive.

First, the fact that Rogers seeks compensatory and punitive damages -- which are not available under the IDEA -- for his IDEA-related claims does not permit Rogers to circumvent

the administrative exhaustion requirements for his other claims under the ADA, PHRA, and Section 1983. *See Batchelor*, 759 F.3d at 276-78 (upholding dismissal for failure to exhaust IDEA administrative remedies where plaintiffs sought compensatory and punitive damages under the ADA and Rehabilitation Act). Neither party disputes that Rogers failed to exhaust administrative remedies under the IDEA. As such, exhaustion would not be futile in this case because there have been no administrative rulings relating to Rogers's IEP or the underlying incident, which is the subject of Counts I, II, IV, and IX.

Next, the Court finds the issues presented in Counts I, II, IV, and IX are not purely legal in nature and would be better presented to an administrative law judge in the first instance as the IDEA requires because the record is not developed on issues related to Counts I, II, IV, and IX. *Compare Batchelor*, 759 F.3d at 281 (refusing to excuse exhaustion where the factual record was not fully developed and the plaintiffs had not participated in hearings before an ALJ to resolve the student's classification and placement), *with Lester H. by Octavia v. Gilhool*, 916 F.2d 865, 869-70 (3d Cir. 1990) (excusing exhaustion where "no evidentiary disputes remain[ed]"). In addition, Rogers does not cite any authority to explain why administrative exhaustion under the IDEA would be futile in this matter. Nor does Rogers proffer facts or cite any authority to explain why exhaustion would cause severe or irreparable harm. While the Court is sympathetic to the frustration of administrative delays, the adjudication of Counts I, II, IV, and IX is not jeopardized by requiring Rogers to first exhaust his administrative remedies under the IDEA. For these reasons, the Court finds that an exception to the administrative exhaustion requirements does not apply to Rogers' complaint. Enforcing the exhaustion requirement "ensures that the purpose of the IDEA remains intact." *Batchelor*, 759 F.3d at 278.

The complaint does not plead facts to establish that the Court has subject-matter jurisdiction over Rogers's claims in Counts I, II, IV, and IX. Even though a facial review of the complaint for subject-matter jurisdiction requires the Court to draw inferences in favor of Rogers, Rogers still "bears the burden of persuasion" as to jurisdiction. *Henderson v. Nationwide Mut. Ins. Co.*, 169 F. Supp. 2d 365, 367 (E.D. Pa. 2001) (citing *Mortensen*, 549 F.2d at 890). Rogers has not carried his burden here. Accordingly, the Court will dismiss Counts I, II, IV, and IX of the complaint without prejudice for lack of subject-matter jurisdiction.[2]

B.  COUNTS III AND V – 42 U.S.C. § 1983 CLAIMS.

Defendants argue that Counts III, IV, and V of Rogers's complaint, which are brought under 42 U.S.C. § 1983, must be dismissed because those claims "fail[] to establish *Monell* liability and the individual Defendants are shielded by the doctrine of qualified immunity. . . ."[3] (Doc. 9, at 19). Section 1983 imposes civil liability on any person who, acting under the color of state law, deprives another person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Shuman ex rel. Shertzer v. Penn Manor*

[2] Because the Court dismissed Count I of the complaint for lack of subject-matter jurisdiction, the Court declines to address Defendants' secondary argument that Count I must be dismissed for failure to state a claim upon which relief may be granted. (Doc. 9, at 15-18).

[3] In the body of the motion to dismiss, Defendants state: "Because [Rogers] fails to establish *Monell* liability and the individual Defendants are shielded by the doctrine of qualified immunity, Counts III, VI, and V must be dismissed." (Doc. 9, at 19). However, in footnote 13, Defendants state "the Individual Defendants are barred from Counts III, IV, and V under the doctrine of qualified immunity." (Doc. 9, at 19 n. 13). Because Counts III, IV, and V assert *Monell* liability against Defendants, the Court will address Defendants' arguments as applied to these causes of action. The Court will address Count VI asserting a claim for Intentional Infliction of Emotional Distress, later in this Memorandum Opinion.

As discussed *supra*, Rogers failed to establish that he exhausted his administrative remedies under the IDEA. Therefore, the Court dismissed Rogers's Fourteenth Amendment Equal Protection Clause claim in Count IV of the complaint. (Doc. 9, at 19). For those reasons, the Court will not address Defendants' additional arguments to dismiss Count IV.

*Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citing *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000)). Section 1983 does not create substantive rights; it provides a remedy for the violation of federal constitutional or statutory rights. *Shuman*, 422 F.3d at 146.

### 1. Claims against the School District

In Counts III and V of the complaint, Rogers asserts that the School District is liable for a violation of the Fourth Amendment, as applied to public school officials by the Fourteenth Amendment, and a Section 1983 failure to train claim. (Doc. 1). Rogers states "[t]he School District failed to properly instruct Lesoine, as well as other staff concerning the emotional support issues and triggers of [Rogers], as well as his accommodation. (Doc. 1, ¶ 159). Furthermore, Rogers alleges "[t]he School District's failure to adequately train and supervise its employees at High School regarding the needs of students in its special education and emotional support classes offered at the School District has caused the constitutional violations and amounted to a deliberate indifference to and callousness disregard to the rights of [Rogers]." (Doc. 1, ¶ 166).

A § 1983 claim against a municipality may proceed in two ways: the plaintiff may allege that an unconstitutional municipal policy or custom led to his injuries or that his injuries were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice. *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019)). A plaintiff alleging an unconstitutional policy must point to "an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject." *Forrest*, 930 F.3d at 105. A plaintiff alleging an unconstitutional custom "must evince a given course of conduct so well-settled and permanent as to virtually constitute law." *Forrest*, 930 F.3d at 105 (citing

*Estate of Roman*, 914 F.3d at 798). The plaintiff must also allege that the policy or custom was the proximate cause of his injuries by demonstrating an "affirmative link" between the policy or custom and the constitutional violation. *Estate of Roman*, 914 F.3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996); quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A plaintiff alleging that his injuries were caused by a failure or inadequacy by the municipality must demonstrate "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest*, 930 F.3d at 106 (citing *Estate of Roman*, 914 F.3d at 798; *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).

"Generally, *Monell* claims are brought against employees or officials that are subordinate to the policymakers of a particular government entity. . . ." *Michalesko v. Freeland Borough,* 18 F.Supp.3d 609, 623 (M.D. Pa. 2014), *aff'd sub nom. Michalesko v. Borough*, 658 F. App'x 105 (3d Cir. 2016). Section 1983 creates no substantive rights, but rather allows a plaintiff to vindicate violations of rights created by the Constitution or federal law. *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979); *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). Thus, to state a claim under § 1983, a plaintiff must show that the defendants, acting under color of state law, deprived him or her of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Kaucher*, 455 F.3d at 423. In this case, the School District is considered to be a municipality. *See B.W. v. Career Tech. Ctr. of Lackawanna Cty.*, 422 F.Supp.3d 859, 889 (M.D. Pa. 2019); *Highhouse v. Wayne Highlands Sch. Dist.*, 205 F.Supp.3d 639 (M.D. Pa. 2016).

It is well established that "a municipality cannot be held liable solely because it

employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002). Municipalities, such as the School District, "are not liable under § 1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation." *B.W.*, 422 F.Supp.3d at 890; *see Monell*, 436 U.S. at 694. There must be a "direct causal link" between the municipal policy or custom and the alleged constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). "Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved." *Tuttle*, 471 U.S. at 823-24.

The plaintiff bears the burden of identifying the "policy" or "custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996). A court may find that a municipal policy exists when a " 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). It is also possible for a court to find the existence of a municipal policy in "the isolated decision of an executive municipal policymaker." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 139 (1988). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually

constitute law." *Andrews*, 895 F.2d at 1480 (citations omitted). A plaintiff can show a custom by "evidence of knowledge and acquiescence," *Beck*, 89 F.3d at 971, and must "demonstrate that, through its deliberate conduct, [defendant school] was the 'moving force' behind [his alleged constitutional violation]." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997).

With respect to the first method of establishing municipal liability, the complaint does not sufficiently allege that a municipal policy or custom caused Rogers's injuries. At no point does the complaint aver that the School District had a policy, regulation, and/or custom to improperly train and supervise its employees. The only semblance of such an allegation in the complaint is that "[t]he School District's policies, practices, and customs as implemented by its decision makers and staff caused the constitutional violations." (Doc. 1, ¶ 165). Rogers does not allege which School District policy, regulation, and/or custom Lesoine was executing when he allegedly violated Rogers's rights. *See Monell*, 436 U.S. at 690. Nor does Rogers allege that other individual Defendants acted pursuant to a policy, regulation, and/or custom of constitutional violations so well-settled as to constitute the "standard operating procedure" of the School District. *Tucker v. Sch. Dist. of Phila.*, No. 19-CV-889, 2019 WL 3802066, at *4 (E.D. Pa. Aug. 13, 2019) (quoting *Bielevicz*, 915 F.2d at 850); *see Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). "Vague assertions of policy or custom" are insufficient to survive a motion to dismiss. *Buoniconti v. City of Phila.*, 148 F.Supp.3d 425, 438 (E.D. Pa. 2015) (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995)); *see Tuttle*, 471 U.S. at 822.

With respect to the second method of establishing municipal liability, Rogers has not sufficiently alleged that the School District failed to train, supervise, and/or discipline its

employees such that it was deliberately indifferent to students' rights to be free from excessive force or equal protection. The United States Supreme Court has recognized that "there are limited circumstances in which an allegation of 'failure to train' can be the basis for liability under § 1983." *Canton*, 489 U.S. at 387. "Where the policy 'concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact.' " *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter*, 181 F.3d at 357). Of note, a failure-to-train claim does not require a plaintiff to allege an unconstitutional policy. *See Estate of Roman*, 914 F.3d at 798. "Additionally, 'the identified deficiency in a city's training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in training [must have] actually caused' the constitutional violation." *Thomas*, 749 F.3d at 222 (quoting *Canton*, 489 U.S. at 391).

The complaint alleges that the School District failed to take proper precautions to prevent the constitutional violations because it did not provide the required escort and properly instruct its faculty and staff members, which resulted in Rogers's verbal and physical altercation with Lesoine. (Doc. 1, ¶ 162-165). Furthermore, Rogers asserts that "[t]he School District's failure to adequately train and supervise its employees at High School regarding the needs of students in its special education and emotional support classes offered at the School District has caused the constitutional violation and amounted to a deliberate indifference to and callousness disregard to the rights of [Rogers]." (Doc. 1, ¶ 166). These "bald assertions" are not entitled to the assumption of truth. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). "The Court cannot, without sufficient factual matter to support the allegations,

reasonably infer that the School District failed to train, supervise and/or discipline its employees or that any such failure reflected a deliberate or conscious choice." *Tucker*, 2019 WL 3802066, at *4.

Accordingly, Defendants' motion to dismiss Counts III and V is granted as to the School District. Defendants will be granted leave to amend to the deficiencies addressed herein regarding municipal liability against the School District. *See Grayson*, 293 F.3d at 108.

### 2. Claims against individual Defendants

Defendants argue that Count III, asserting violation of the Fourth and Fourteenth Amendment, fails to state a claim against individual Defendants sued in their official capacities because "[t]he only facts regarding a potential seizure are that 'Lesoine pressed his forearm against [Rogers]'s chest multiple time," and prevented Rogers from entering his classroom. (Doc. 9, at 21). First, Rogers asserts that Defendants violated his Fourth Amendment rights when Rogers "was unlawfully seized and detained by Lesoine against his will while he was simply attempting to walk to his emotional support classroom." (Doc. 1, ¶¶ 135, 142). Rogers states "Defendants, by and through its agents, had no reasonable basis under the circumstances to seize and detain [Rogers] against his will." (Doc. 1, ¶ 136).

The Third Circuit has articulated that: "A seizure occurs for Fourth Amendment purposes when 'a reasonable person would have believed that he was not free to leave.' " *Shuman*, 422 F.3d at 147 (citing *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)) The Fourth Amendment's prohibition of unreasonable seizures undoubtedly applies in the school context. *New Jersey v. T.L.O.*, 469 U.S. 325, 335 (1985). However, for government conduct to amount to a seizure, it must be intentional. In *Brower v. County of Inyo*, 489 U.S. 593 (1989), the Supreme Court considered whether the police had seized a suspect by setting up a roadblock

into which he drove his car. In ruling that the plaintiffs had adequately alleged a seizure, the

Court explained:

> Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking ... but the detention or taking itself must be willful. . . . [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement ... but only when there is a governmental termination of freedom of movement through means intentionally applied.

*Brower*, 489 U.S. at 596-97.

This language from *Bower* led the Third Circuit later to conclude: "[W]e think it reasonable

to read *Brower* as focusing on the objective intent of officials to use force to effectuate a seizure

and the subsequent seizure flowing from the use of that force." *In re City of Phila. Litig.*, 158

F.3d 711, 721-22 (3d Cir.1998).

In this case, Rogers has not alleged any "intentional acquisition of physical control,"

nor is there any suggestion that individual Defendants intended to confine Rogers in the

hallway. *K.M. v. Chichester Sch. Dist.*, 152 F.Supp.3d 412, 416 (E.D. Pa. 2015) (dismissing

Fourth Amendment claim for failure to allege intentional or willful restriction of student's

freedom of movement). Notably, the Third Circuit has held that '"the 'momentary use of

physical force by a teacher in reaction to a disruptive or unruly student does not effect a seizure

of the student under the Fourth Amendment,' and therefore 'is a scenario to which the Fourth

Amendment does not textually or historically apply.' " *Gottlieb ex rel. Calabria v. Laurel

Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001) (quoting *Kurilla v. Callahan*, 68 F. Supp.

2d 556, 563 (M.D. Pa. 1999)). The complaint does not establish Defendants' willfulness to

seize Rogers, which is required to state a Fourth Amendment claim under *Brower*. Therefore,

Rogers fails to state a Fourth Amendment claim.

Next, Rogers alleges that individual Defendants violated his Fourteenth Amendment right to be free from excessive force. Specifically, Rogers states that "[t]he action of pressing a forearm into [Rogers]'s chest multiple times constitutes excessive use of force on the part of a school official." (Doc. 1, ¶ 140). "A decision to discipline a student, if accomplished through excessive force and appreciable physical pain, may constitute . . . a violation of substantive due process prohibited by the Fourteenth Amendment." *Metzger ex rel. Metzger v. Osbeck*, 841 F.2d 518, 520 (3d Cir. 1988) (citing *Hall v. Tawney*, 621 F.2d 607, 611 (4th Cir. 1980)). Accordingly, the Court will review Rogers's Count III claim by reference to his right to substantive due process under the Fourteenth Amendment. *Tucker*, 2019 WL 3802066, at *2; *see MG ex rel. LG v. Caldwell-W. Caldwell Bd. of Educ.*, 804 F. Supp. 2d 305, 317 (D.N.J. 2011) (applying substantive due process standard to special education student's excessive force claim brought under Fourth and Fourteenth Amendments).

The Third Circuit has held that for federal claims alleging the use of excessive force by public school officials, the Fourteenth Amendment's "shocks the conscience" standard applies. *Gottlieb*, 272 F.3d at 172. Under this standard, "whether the constitutional line has been crossed" is determined by analyzing four elements: (1) "[w]as there a pedagogical justification for the use of force?"; (2) "[w]as the force utilized excessive to meet the legitimate objective in this situation?"; (3) "[w]as the force applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?" and (4) "[w]as there a serious injury?" *Gottlieb*, 272 F.3d at 172-73. To establish an excessive force claim, the alleged injury must have been a physical injury, not psychological, mental, or emotional. *JGS v. Titusville Area Sch. Dist.*, 737 F. Supp. 2d 449, 456-57 (W.D. Pa. 2010). "Courts have applied a high standard in finding substantive due process violations sufficiently

egregious to 'shock the conscience', with respect to children and particularly in a public school setting." *K.A. ex rel. J.A. v. Abington Heights Sch. Dist.*, 28 F.Supp.3d 356, 369 (M.D. Pa. 2014).

Here, Rogers's complaint fails to provide sufficient plausible allegations that individual Defendants' actions sufficiently "shock the conscience" to support an excessive force claim under the Fourteenth Amendment. Rogers claims that "Lesoine pressed his forearm against [his] chest multiple times" after Rogers refused to take out his earbuds, and that as "[a] result of the continued following, antagonizing, and demanding, [Rogers] and Lesoine became involved in a verbal and physical altercation." (Doc. 1, ¶¶ 131-133). Rogers alleges that the physical altercation was prompted only by Defendants failure to comply with Rogers's IEP. (Doc. 1, ¶ 142). Rogers states that Defendants' conduct caused him to suffer "financial hardship, damages, pain and suffering, emotional distress, severe mental anguish, and impairment of his reputation and embarrassment upon [Rogers] and his family." (Doc. 1, ¶ 143).

Even accepting these allegations as true, the allegations could not be considered sufficiently egregious to rise to the level of conscious-shocking. First, it has been recognized that using force in reaction to a disruptive student serves a pedagogical objective. *See D.C. v. Pittsburgh Pub. Sch.*, 415 F.Supp.3d 636, 661 (W.D. Pa. 2019) (dismissing excessive force claim where Defendants restrained student after he destroyed property, threw objects, pushed staff members, failed to follow directives, and ran from principal). Second, Rogers does not allege facts to establish that Defendants' conduct constituted excessive force under the circumstances. Third, Rogers does not plead facts showing that Lesoine's "action of pressing a forearm into Rogers's chest multiple times" or Defendants' failure to comply with Rogers's IEP was malicious. Lastly, Rogers's claims are devoid of any suggestion that Rogers was

physically harmed or abused at the time of his "detention" by Lesoine. *See, e.g., JGS*, 737 F. Supp. 2d at 456-57 (holding that the excessive force claim failed "on the basis of the undisputed lack of any physical injury"). Therefore, Rogers does not state a Fourteenth Amendment claim.

Accordingly, Defendants' motion to dismiss is granted and Count III of the complaint is dismissed without prejudice as Rogers will be granted leave to amend to cure the deficiencies addressed herein. (Doc. 8).

### 3. Remaining Arguments

Because Rogers's complaint fails to state a claim upon which relief may be granted under Rule 12(b)(6), the Court declines to assess Defendants' remaining arguments, including those concerning claims against individual Defendants in their official capacities, immunity, and punitive damages. (Doc. 9, at 12). The Court nonetheless acknowledges that "[t]he Supreme Court has recognized that a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the individual's office." *Arnold v. New Jersey*, No. 03-CV-3997, 2007 WL 1381757, at *3 (D.N.J. May 9, 2007) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)) ("Therefore, suits against state officials in their official capacities are treated as suits against the state since the real party in interest is the state, not the named official."). Further, states and state-like entities, as well as state officials, under § 1983 are generally afforded Eleventh Amendment immunity in claims for money damages and non-monetary-relief to remedy past harms. *Kokinda v. Pennsylvania Dept. of Corr.*, 779 F. App'x 944, 948 (3d Cir. 2019) ("The District Court properly concluded that Kokinda's claimed violations of §§ 1983, 1985(3), and 1986 against the DOC and the individual prison staff members sued in their official capacities are barred by the Eleventh Amendment."); *see*

*Miller v. Rutgers*, 619 F. Supp. 1386, 1392 (D.N.J. 1985) ("[I]n holding that the Eleventh Amendment applies to Rutgers, I am in accord with the majority of federal courts which have considered the applicability of the amendment to state universities."); *see also Harris v. Zyskowski*, No. 12-CV-7191, 2016 WL 3566721, at *4 (D.N.J. June 30, 2016) ("Because the remaining claim of the Complaint does not seek prospective relief, and only seeks declaratory relief as to Defendant's *past actions*, the relief Plaintiff seeks is barred by the Eleventh Amendment." (emphasis added)).

However, the Court notes that while the complaint does not allege sufficient facts to establish a violation of Rogers's constitutional rights, the Court cannot discern at this stage in the litigation whether Rogers's assertions are meritless. Defendants argue that Robison, Gustafson, Lesoine, Higgins, and Strickland are shielded by the doctrine of qualified immunity, which bars Rogers's constitutional claims against them. (Doc. 9, at 19 n.13). The doctrine of qualified immunity provides that government officials performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right [ ] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999)*; Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). Qualified immunity provides not only a defense to liability, but "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). In considering whether a defendant is entitled to qualified immunity, the court must analyze two factors: (1) whether the plaintiff has shown facts that make out a constitutional rights violation; and if so, (2) whether those rights were "clearly established" at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) ("Qualified immunity shields government officials from civil damages liability unless the official violated

a statutory or constitutional right that was clearly established at the time of the challenged conduct.") (citation omitted). Therefore, based on the insufficiency of the record, the individual Defendants are not entitled to qualified immunity at this time. (Doc. 8).

In addition, the Court notes that Rogers's request for punitive damages will not be dismissed at this juncture. Whether an award of punitive damages is warranted involves "a fact-intensive issue inappropriate for resolution at the motion to dismiss stage, where no factual record has yet been developed." *Miller v. Helm*, No. 17-CV-1590, 2017 WL 6405738, at *7 (M.D. Pa. Dec. 15, 2017). Indeed, "this Court has consistently held that it is premature to dismiss demands for punitive damages prior to discovery." *Campbell v. Balon*, No. 16-CV-779, 2017 WL 2880856, at *19 (M.D. Pa. July 6, 2017); *Bobrick Washroom Equip., Inc. v. Scranton Prods.*, Inc., No. 14-CV-853, 2017 WL 2126320, at *11 n.15 (M.D. Pa. May 16, 2017). Here, Rogers does not contest that punitive damages cannot be alleged against the School District and individual Defendants in their official capacities. Instead, Rogers states that he seeks punitive damages against Defendants in their individual capacities. (Doc. 15, at 36). Nevertheless, at this preliminary stage of litigation, dismissal of Rogers's request for punitive damages against Defendants in their individual capacities is not appropriate. However, Rogers's request for punitive damages in Count I under the ADA is dismissed with prejudice as punitive damages may not be awarded in private suits against the ADA. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002); (Doc. 1, at 18).

### C. Counts VI, VII, and VIII - State Law Claims

In the complaint, Rogers asserts claims against Defendants under Pennsylvania law for IIED, breach of fiduciary duty, and negligence. (Doc. 1, at 28-36). Rogers alleges federal question jurisdiction under 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. §

1343(a)(4). (Doc. 1, ¶ 2). However, as the Court found that Rogers's federal claims must be dismissed for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted, the Court declines to exercise supplemental jurisdiction over his state law claims. 28 U.S.C. § 1367(c)(3). Whether a court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state law claims remain, the balance of these factors indicates that the remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. The Court finds nothing in the record to distinguish this case from the ordinary one, and thus the balance of factors "point toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n.7.

D. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson*, 293 F.3d at 108. Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). In this case, the Court will grant Rogers leave to file an amended complaint in an attempt to cure the deficiencies outlined herein. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Grayson*, 293 F.3d at 108.

Rogers will be allowed an opportunity to file a single, unified, legible amended complaint setting forth factual allegations and legal claims in a manner that can be reviewed

by the Court and, if necessary, answered by Defendants. The amended complaint must be a pleading that *stands by itself without reference to the original complaint*. *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992) (emphasis added). Further, the amended complaint must be "simple, concise, and direct" as required by Rule 8(d)(1) of the Federal Rules of Civil Procedure. It must also be limited to those claims that arise out of the same transaction or occurrence or series of transactions or occurrences as averred, albeit vaguely, in the original complaint. All claims should be set out in individual, numbered counts.

Regarding Counts I, II, IV, and IX, if Rogers chooses to file an amended complaint further clarifying these claims, it must clearly identify facts showing that Rogers has exhausted his administrative remedies. An amended complaint must allege that Rogers followed IDEA procedures by filing an administrative complaint and appealing the initial administrative decision, and that Rogers was "aggrieved" at the end of the administrative procedures. The amended complaint must specify which administrative rulings or decisions have left Rogers aggrieved. Alternatively, Rogers must allege facts to show that Defendants have failed to comply with prior administrative rulings and that Rogers now seeks to enforce those prior rulings. Either way, Rogers must clarify which instances of Defendants' misconduct were presented in which administrative proceeding, the outcome of each proceeding with respect to each instance of misconduct, and the reasons why Rogers is now entitled to judicial review in this Court.

Failure to file an amended complaint in accordance with the aforementioned requirements will result in the dismissal of this action in its entirety.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** and Rogers's

complaint is dismissed without prejudice. (Doc. 8). However, Rogers's request for punitive damages under the ADA in Count I are dismissed with prejudice as to all Defendants.

Rogers shall have 28 days from the date of this Memorandum Opinion to file an amended complaint setting forth allegations in support of this civil action against Defendants and curing the deficiencies outlined herein.

An appropriate Order follows.


**BY THE COURT:**


Dated: **August 5, 2022**                              *s/ Karoline Mehalchick*
                                                                          **KAROLINE MEHALCHICK**
                                                                          **Chief United States Magistrate Judge**