## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

TAJ K. ROGERS,

                  Plaintiff,

    v.

POCONO MOUNTAIN SCHOOL
DISTRICT, et al.,

              Defendants.

CIVIL ACTION NO. 3:21-CV-02072

(MEHALCHICK, M.J.)

## MEMORANDUM

Presently before the Court is a motion to dismiss for failure to state a claim brought by Defendants Pocono Mountain School District ("School District") and Kevin Lesoine ("Lesoine"), individually and in his capacity as a teacher at Pocono Mountain East High School (collectively, "Defendants"). (Doc. 22). On December 9, 2021, Plaintiff Taj K. Rogers ("Rogers") initiated this action by filing the complaint pursuant to the Americans with Disabilities Act ("ADA"), the Individuals with Disabilities Education Act ("IDEA"), 42 U.S.C. § 1983, and various state law claims. (Doc. 1). Rogers filed the amended complaint on September 1, 2022. (Doc. 18). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 7). For the following reasons, Defendants' motion to dismiss shall be GRANTED in part and DENIED in part. (Doc. 22).

### I.    BACKGROUND AND PROCEDURAL HISTORY

On December 9, 2021, Rogers filed the complaint against Pocono Mountain School District, Dr. Elizabeth Robison, Dr. Marybeth Gustafson, Kevin Lesoine, Daniel Higgins, and Jerusalem Strickland. (Doc. 1). On February 11, 2022, Defendants filed a motion to dismiss the complaint. (Doc. 8). On August 5, 2022, the Court granted the motion to dismiss,

dismissing the claim for punitive damages with prejudice, and granted Rogers leave to file an amended complaint. (Doc. 16; Doc. 17). On September 1, 2022, Rogers filed the amended complaint against the Defendants, asserting the following cases of action: Count I – Section 1983 violation of the Fourth and Fourteenth Amendment; Court II – Section 1983 *Monell* liability; and Count III – Intentional Infliction of Emotional Distress ("IIED"). (Doc. 18). For relief, Rogers requests compensatory and punitive damages, as well as attorney's fees. (Doc. 18, at 15, 19, 21).

In the amended complaint, Rogers asserts that he is a nineteen-year-old, African-American, disabled individual with special needs who has been diagnosed with Conduct Disorder, Attention Deficient/Hyperactivity Disorder ("ADHD"), and Opposition Defiance Disorder. (Doc. 18, ¶¶ 7, 12). Rogers alleges that he is a former student of the School District who was identified as having a specific learning disability in reading fluency and written expression and was a recipient of an Individualized Education Program ("IEP") with the School District. (Doc. 18, ¶ 15). The IEP provided Rogers with an escort, Jerusalem Strickland, and allowed him to wear headphones. (Doc. 18, ¶¶ 27-28, 41). Strickland acted as his escort and prior to June 14, 2018, he did so for three months without issue. (Doc. 18, ¶¶ 28, 30). Furthermore, Rogers states he was eligible for special education services under the IDEA. (Doc. 18, ¶¶ 16). Rogers alleges that he has several disabilities, including specific learning disabilities, attention deficit hyperactivity disorder, conduct disorder, and opposition defiance disorder, as well as identifiable triggers and trauma-based issues. (Doc. 18, ¶¶ 17-21). Rogers states that at all times relevant to this action, he was receiving services in the Colonial Intermediate Unit 20's therapeutic emotional support program with classes located in the Pocono Mountain East High School, which provides support and structure for students who

have demonstrated a distinct lack of success at school adjustment due to emotional and behavioral issues. (Doc. 18, ¶¶ 23-24).

The events giving rise to this action follow. On June 14, 2018, Rogers arrived at the High School and did not see Strickland. (Doc. 18, ¶¶ 32-33). A staff member instructed Rogers to proceed to his emotional support classroom, and he thereafter did so with another classmate, who was Caucasian. (Doc. 18, ¶¶ 34-37). While walking in the hallway to the classroom, Rogers was wearing his earbud-style headphones when Lesoine approached Rogers and asked him to remove his headphones, but Rogers did not hear him. (Doc. 18, ¶¶ 40, 44). Rogers states "Lesoine had not been made aware of Rogers' IEP requiring an escort, or earbuds as an accommodation, by the Pocono Mountain East High School or the School District." (Doc. 18, ¶ 45). Rogers alleges that Lesoine did not have a visible identification badge and did not identify himself as a teacher. (Doc. 18, ¶¶ 48-49). Lesoine continued to follow Rogers and requested he remove his headphones. (Doc. 18, ¶ 46). Roger avers that Lesoine did not make any comments to the Caucasian, female student who was walking with Rogers. (Doc. 18, ¶ 51). Rogers claims he asked Lesoine who he was, asked other teachers in the hallway about who was following him, and asked Lesoine to leave him alone. (Doc. 18, ¶¶ 53-55).

Once Rogers arrived at the emotional support classroom and continued to refused to remove his headphones, Lesoine allegedly "pressed his forearm against [Rogers'] chest multiple times," and Rogers "removed Lesoine's forearm from his chest at which point Lesoine stated, 'now you're going to jail.'" (Doc. 18, ¶¶ 58-59). At that point, Rogers and Lesoine became involved in a verbal and physical altercation. (Doc. 18, ¶ 60). Rogers alleges that only after the altercation did Lesoine remove his lanyard from inside his shirt identifying

him as a teacher of Pocono Mountain East High School and the School District. (Doc. 18, ¶ 61). As a result of that altercation, a discipline report was generated by Pocono Mountain High School and the School District, a manifestation hearing was conducted on June 18, 2018, by the School District, Rogers was suspended for two days, and Rogers was formally charged as a juvenile with aggravated assault and related offenses. (Doc. 18, ¶¶ 70-73).

On September 13, 2022, Defendants filed the motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction and failure to state a claim. (Doc. 22). The motion to dismiss has been fully briefed and is ripe for disposition. (Doc. 22; Doc. 23; Doc. 29; Doc. 30).

## II.   MOTION TO DISMISS STANDARDS

### A.   RULE 12(B)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When a party moves to dismiss under more than one Rule 12 ground, the Court must first consider the Rule 12(b)(1) challenge, 'because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot.' " *A.D. v. Haddon Heights Bd. of Educ.*, 90 F.Supp.3d 326, 334 (D.N.J. 2015), *aff'd*, 833 F.3d 389 (3d Cir. 2016) (citation omitted). "A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." *Vieth v. Pennsylvania*, 188 F. Supp. 2d 532, 537 (M.D. Pa. 2002). The failure to exhaust administrative remedies is a jurisdictional issue and the appropriate device to raise this issue is a motion to dismiss under Rule 12(b)(1). *See Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271 (3d Cir. 2014). A Rule 12(b)(1) dismissal is not a judgment on the merits, but only a determination that the court lacks the

authority to hear the case. *Swope v. Central York Sch. Dist.*, 796 F. Supp. 2d 592, 599 (M.D. Pa. 2011).

Rule 12(b)(1) challenges may be "facial" or "factual." *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack challenges whether jurisdiction has been properly pled and requires the court to "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891.) Conversely, when a defendant sets forth a factual attack on subject-matter jurisdiction, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case. . . 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.' " *Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891).

In this case, Defendants challenge Rogers's alleged failure to exhaust administrate remedies and, thus, present a factual attack on subject-matter jurisdiction. *See Rohrbaugh b/a/t Rohrbaugh v. Lincoln Intermediate Unit*, 255 F.Supp.3d 589, 592 (M.D. Pa. 2017). As a result, the Court will weigh the allegations in the complaint without presuming truthfulness in order to determine the merits of the jurisdictional claim.

B. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint are true and viewing them in the light most favorable to

the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although a court must accept the factual allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

C. 42 U.S.C. § 1983

Section 1983 provides a private cause of action with respect to violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

6

injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Thus, to state a § 1983 claim, a plaintiff must demonstrate that: (1) the defendants, acting under color of state law, (2) deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Further, it is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka*, 481 F.3d at 210 (citations and quotations omitted).

## III.   DISCUSSION

Defendants move to dismiss the claims raised in Rogers's amended complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6). (Doc. 22). Specifically, Defendants argue that Counts I and II must be dismissed because: (1) Rogers fails to state a claim under Section 1983 for violation of the Fourth and Fourteenth Amendment; (2) Rogers fails to establish *Monell* liability; and (3) Lesoine is shielded by the doctrine of qualified immunity. (Doc. 23, at 12). In addition, Defendants argue that Count III must be dismissed because Rogers' tort causes of action against the School District and Lesoine are barred by the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A § 8541. (Doc. 23, at 19).

### A.   COUNTS I AND II – 42 U.S.C. § 1983 CLAIMS.

In Counts I and II, Rogers asserts Defendants violated his constitutional rights under the Fourth and Fourteenth Amendments. (Doc. 18, at 11-15). For purposes of the § 1983

claims, it is undisputed that a public school district and its employees, including the school principal, are state actors. *See Daniels v. Sch. Dist. of Phila.*, 982 F. Supp. 2d 462, 477 (E.D. Pa. 2013); *K.S. v. Sch. Dist. of Phila.*, No. 05-CV-4916, 2007 WL 1009815, at *2 (E. D.P a. Mar. 28, 2007). Thus, Defendants' alleged conduct will be reviewed.

Defendants argue that Counts I and II of Rogers' amended complaint, which are brought under 42 U.S.C. § 1983, must be dismissed because Rogers "fails to state a claim upon which relief can be granted, fails to establish *Monell* liability, and the individual defendant, Mr. Lesoine, is shielded by the doctrine of qualified immunity."[1] (Doc. 23, at 12). In addition, Defendants assert that Rogers' request for punitive damages must be stricken.[2]

---

[1] As noted by Rogers, Defendants mention that Lesoine is shielded by the doctrine of qualified immunity, but do not elaborate on the factual basis for this contention. (Doc. 23, at 12). The doctrine of qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "It is the defendants' burden to establish that they are entitled to such immunity." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989)). Considering Defendants' assertion, the Court finds that at the pleading stage, it is premature to determine whether Lesoine is entitled to qualified immunity with respect to Rogers' § 1983 claims. *See Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (per curiam) ("it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases."). Therefore, the Court declines to address Defendants' claim of qualified immunity at this time.

[2] Whether an award of punitive damages is warranted involves "a fact-intensive issue inappropriate for resolution at the motion to dismiss stage, where no factual record has yet been developed." *Miller v. Helm*, No. 17-CV-1590, 2017 WL 6405738, at *7 (M.D. Pa. Dec. 15, 2017). Indeed, "this Court has consistently held that it is premature to dismiss demands for punitive damages prior to discovery." *Campbell v. Balon*, No. 16-CV-779, 2017 WL 2880856, at *19 (M.D. Pa. July 6, 2017); *Bobrick Washroom Equip., Inc. v. Scranton Prods.*, Inc., No. 14-CV-853, 2017 WL 2126320, at *11 n.15 (M.D. Pa. May 16, 2017). Here, Rogers does not contest that punitive damages cannot be alleged against the School District and individual Defendant Lesoine in his official capacity. Instead, Rogers states that he seeks punitive damages against Lesoine in his individual capacity. (Doc. 22, at 23 n.7). At this stage of litigation, dismissal of Rogers' request for punitive damages against Lesoine in his individual

(Doc. 23, at 12 n.3).

### 1. Fourth Amendment Claims

In Count I of the amended complaint, Rogers asserts that Defendants violated Rogers' right under the Fourth Amendment, as applied to public school officials through the Fourteenth Amendment, to be free from unreasonable searches and seizures. (Doc. 18, at 11-15). Rogers alleges that on June 14, 2018, he was prevented from entering his emotional support classroom when "Lesoine willfully seized [Rogers] by following him down the hallway and pressing his forearm against [Rogers'] chest preventing [Rogers'] freedom of movement." (Doc. 18, ¶ 97). Rogers claims "Lesoine knowingly restrained [Rogers] as an intentional acquisition of physical control," "Defendants, by and through its agents, had no reasonable basis under the circumstances to seize and detain [Rogers] and to restrict his freedom of movement," and "Defendants' actions interfered with the educational process and were no necessary under the circumstances." (Doc. 18, ¶¶ 98, 102-03). In addition, Rogers avers that he "was not acting unruly or in an otherwise disruptive manner in the hallway as to warrant to use of any physical force to seize [Rogers];" "Defendants acted intentionally, willfully, and recklessly to unlawfully deny [Rogers'] liberty to enter his emotional support classroom and deprived [Rogers] of his constitutional right to be free from unreasonable search and seizure;" and "Defendants' failure to comply with the requirements of [Rogers'] IEP directly led to this unlawful seizure by a staff member." (Doc. 18, ¶¶ 104-06).

The Fourth Amendment protects against unlawful search and seizure conducted by state officials. *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009). The Fourth

---

capacity is not appropriate. Accordingly, Defendants' motion to dismiss is **DENIED**, and Rogers' request for punitive damages will not be dismissed at this juncture.

Amendment prohibition on unreasonable searches and seizures applies to public school students. *See Safford*, 557 U.S. at 370 (analyzing plaintiff's Fourth Amendment claim in a public school setting); *New Jersey v. T.L.O.*, 469 U.S. 325, 336-37 (1985) ("In carrying out searches and other disciplinary functions pursuant to [educational and disciplinary] policies, school officials act as representatives of the State[ ], and they cannot claim [ ] immunity from the strictures of the Fourth Amendment."). Specifically, "seizures in the public school context [are] to be governed by the reasonableness standard, [while] giving special consideration to the goals and responsibilities of [ ] public schools." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.,* 422 F.3d 141, 148 (3d Cir.2005). The special consideration is "consistent with the reduced liberty interest afforded students in the public school setting," whereby students are compelled to attend school in the first place and are under the control and direction of teachers and administrators while there. *Shuman*, 422 F.3d at 149.

> [W]hen a school official is acting in a way which may be described as an administrative function, *T.L.O.* controls. The reasonableness of a Fourth Amendment seizure of a public school student . . . must be evaluated in the context of the school environment; only when the restriction of liberty is unreasonable under the circumstances then existing and apparent will there be a violation of the Fourth Amendment.

> *Leach ex rel. Dyson v. Principal Baum,* No. 04-135, 2004 WL 834732, at *2 (E.D. Pa. Apr.16, 2004) (citation omitted).

In *Shuman*, where a student was investigated for sexual misconduct, the Third Circuit Court of Appeals established a two-prong analysis of claims of unlawful search and seizure in the public school setting under the Fourth Amendment. 422 F.3d at 146. "[F]irst, there must have been a seizure and, second, the seizure must have been unreasonable under the circumstances." *Est. of Massey v. City of Philadelphia*, 118 F.Supp.3d 679, 688 (E.D. Pa. 2015) (citing *Shuman*, 422 F.3d at 146). The Third Circuit articulated that the element of seizure is

met when (1) "a reasonable person would have believed he was not free to leave," *Shuman,* 422 F.3d at 147 (quoting *Michigan v. Chesternut,* 486 U.S. 567, 573 (1988)), and (2) the seizure was intentional. *Brower v. Cty. of Inyo,* 489 U.S. 593, 596-97 (1989); *see also K.M. v. Chichester Sch. Dist.*, 152 F. Supp. 3d 412, 420 (E.D. Pa. 2015) (holding that the plaintiff failed to allege illegal seizure because plaintiff failed to allege facts that allowed inference of an intentional seizure).

Defendants argue that Court I must be dismissed because Rogers was not seized since "he was in the hallway of the high school, which can reasonably be concluded to include various alternate routes for [Rogers] to take," and "Lesoine's actions are akin to the actions in *Gottlieb* and *Kurilla*, which were determined to not violate the Fourth Amendment." (Doc. 23, at 9). In opposition, Rogers distinguishes this case from *Gottlieb* and *Kurilla*, asserting that "[t]he facts as pleaded state that Lesoine exercised intentional physical control over [Rogers], without any violent or unruly behavior that required Lesoine to act in a manner described in *Gottlieb* or *Kurilla*." (Doc. 29, at 14). Rogers asserts that he "was not acting in an unruly manner as described in *Gottlieb*, as he was following the rules set forth by the district, and the direction given to him by the main office." (Doc. 29, at 15). In response, Defendants argue that Rogers' comparison of the facts in *Gottlieb* to the facts before the Court is contrary to his own pleading because Rogers "was wearing headphones in the hallway in violation of School District policy, which unbeknownst to Lesoine was an accommodation of Rogers' IEP." (Doc. 30, at 6).

Upon consideration of the above-mentioned standards, the Court finds that Rogers has sufficiently pled facts from which the Court could reasonably infer that he was unlawfully "seized." In determining when use of physical force constitutes a seizure, courts within the

11

Third Circuit draw a distinction between situations where there is "control over the plaintiffs body such that the plaintiff either succumbed to the force or was overpowered despite efforts to resist," and situations where there is either brief physical contact or no submission to the use of force. *Smith v. Dep't of Gen. Servs.,* No. 1:04–CV–0997, 2005 WL 1563505, at *10 (M.D. Pa. July 1, 2005) (distinguishing *Lloyd v. Jefferson,* 53 F. Supp. 2d 643 (D.Del.1999)). In the school context, courts think about seizures differently "as students are generally not at liberty to leave the school building when they wish." *Crochran v. Columbus City Sch.*, 748 F. App'x 682, 685 (6th Cir. 2018) (quoting *Couture v. Bd. of Educ.*, 535 F.3d 1243, 1250-51 (10th Cir. 2008)). Thus, in the school context, courts consider whether "the limitation on the student's freedom of movement . . . significantly exceed[ed] that inherent in every-day compulsory attendance." *Crochran*, 748 F. App'x at 685 (quoting *Couture*, 535 F.3d at1250-51). "To qualify as a seizure in the school context, the limitation on the student's freedom of movement must significantly exceed that inherent in every-day, compulsory attendance." *Couture*, 535 F.3d at 1251.

The Court finds that at this early stage of the case, the facts alleged in the amended complaint are sufficient to raise the likelihood, above a speculative level, that Lesoine unlawfully seized Rogers. Considering Rogers's age and special needs, as well as the nature of the seizure, it is plausible that placing his forearm on Rogers's chest and preventing him from entering his classroom for not removing his headphones was excessive. *Cf. Torres v. Madrid*, 141 S. Ct. 989, 1003 (2021) (holding that "application of physical force to the body of a person with intent to restrain is a seizure").

The question now becomes whether the qualifying seizures were reasonable. *See Elkins v. United States*, 364 U.S. 206, 222 (1960) (stating that "the Constitution forbids . . . not all

searches and seizures, but unreasonable searches and seizures"). In the public school setting, "[t]he Fourth Amendment's reasonableness inquiry . . . must account for 'the schools' custodial and tutelary responsibility' over the students entrusted to their care." *Shade v. City of Farmington*, 309 F.3d 1054, 1059 (8th Cir. 2002) (quoting *Vernonia Sch. Dist. V. Acton*, 515 U.S. 646, 656 (1995)). Here, the alleged actions of Lesoine toward Rogers are sufficient to give rise to a plausible claim for unreasonable use of force in violation of his Fourth Amendment rights. The allegations against Lesoine indicate that he acted in a way that would trigger a behavioral response from Rogers, and then immediately applied adverse intervention techniques rather than allow Rogers to enter his emotional support classroom as he normally does with a IEP-appointed escort. In light of the heightened protections accorded to students with disabilities and taking all factual allegations contained in the amended complaint as true, the Court declines to find that Rogers has failed to state a plausible claim for violation of the Fourth Amendment against Defendants.

Accordingly, Defendants' motion to dismiss is DENIED.

### 2. *Monell* Claim

In Count II of the amended complaint, Rogers asserts that the School District is liable for a violation of the Fourth Amendment, as applied to public school officials by the Fourteenth Amendment, and a Section 1983 failure to train claim. (Doc. 18). Rogers avers that "[t]he School District has a policy of requiring [Rogers] to have an escort as part of his IEP," and "failed to properly instruct Lesoine, as well as other staff concerning the emotional support issues and triggers of [Rogers], as well as his accommodation." (Doc. 18, ¶¶ 191, 123). In addition, Rogers argues that the School District "failed to properly train and supervise its employees and administrative staff regarding the proper procedures if an escort is not

available for students with emotional and trauma-based issues," "failed to properly train and supervise staff regarding de-escalation tactics for students with emotional support issues," and "failed to take precautions to prevent the constitutional violations, and the School District's failure to provide the required escort directly caused [Rogers'] unlawful seizure and verbal and physical altercation with a staff member and subsequent criminal charges." (Doc. 18, ¶¶ 121, 124, 126). Rogers claims that as a result of the School District's failure to properly instruct, train, and supervise its faculty and staff members, he was not provided an escort, which resulted in him being unlawfully seized and involved in a verbal and physical altercation. (Doc. 18, ¶¶ 127-28). Rogers alleges "[t]he acts of the School District, by and through its agents, were willful, wanton, malicious, oppressive, and were motivated solely by the desire to emotionally harm [Rogers] and his family, and were performed with malicious and wanton disregard for [Rogers'] constitutional rights." (Doc. 18, ¶¶ 130-31).

A § 1983 claim against a municipality may proceed in two ways: the plaintiff may allege that an unconstitutional municipal policy or custom led to his injuries or that his injuries were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice. *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798-99 (3d Cir. 2019)). A plaintiff alleging an unconstitutional policy must point to "an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject." *Forrest*, 930 F.3d at 105. A plaintiff alleging an unconstitutional custom "must evince a given course of conduct so well-settled and permanent as to virtually constitute law." *Forrest*, 930 F.3d at 105 (citing *Estate of Roman*, 914 F.3d at 798). The plaintiff must also allege that the policy or custom was the proximate cause of his injuries by demonstrating an "affirmative link" between the policy

14

or custom and the constitutional violation. *Estate of Roman*, 914 F.3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996); quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A plaintiff alleging that his injuries were caused by a failure or inadequacy by the municipality must demonstrate "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Forrest*, 930 F.3d at 106 (citing *Estate of Roman*, 914 F.3d at 798; *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).

"Generally, *Monell* claims are brought against employees or officials that are subordinate to the policymakers of a particular government entity. . . ." *Michalesko v. Freeland Borough,* 18 F.Supp.3d 609, 623 (M.D. Pa. 2014), *aff'd sub nom. Michalesko v. Borough*, 658 F. App'x 105 (3d Cir. 2016). Section 1983 creates no substantive rights, but rather allows a plaintiff to vindicate violations of rights created by the Constitution or federal law. *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979); *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). Thus, to state a claim under § 1983, a plaintiff must show that the defendants, acting under color of state law, deprived him or her of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Kaucher*, 455 F.3d at 423. In this case, the School District is considered to be a municipality. *See B.W. v. Career Tech. Ctr. of Lackawanna Cty.*, 422 F.Supp.3d 859, 889 (M.D. Pa. 2019); *Highhouse v. Wayne Highlands Sch. Dist.*, 205 F.Supp.3d 639 (M.D. Pa. 2016).

It is well established that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658,

691 (1978); *Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002). Municipalities, such as the School District, "are not liable under § 1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation." *B.W.*, 422 F.Supp.3d at 890; *see Monell*, 436 U.S. at 694. There must be a "direct causal link" between the municipal policy or custom and the alleged constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Tuttle*, 471 U.S. at 823-24. "Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved." *Tuttle*, 471 U.S. at 823-24.

The plaintiff bears the burden of identifying the "policy" or "custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996). "A policy exists 'when a decisionmaker possess[ing] final authority to establish . . . [public] policy with respect to the action issues an official proclamation, policy, or edict.'" *K.E. v. Dover Area School District*, No. 1:1-CV-1634, 2016 WL 2897614, at *5 (M.D. Pa. 2016) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)). "A custom is 'an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law.'" *K.E.*, 2016 WL 2897614, at *5 (quoting *Natale*, 318 F.3d at 584). "A plaintiff may also establish a policy or custom [and a *Monell* claim] when a 'policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of

16

constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' " *K.E.*, 2016 WL 2897614, at *5 (quoting *Natale*, 318 F.3d at 584). "A government entity exhibits deliberate indifference when it 'disregard[s] a known or obvious consequence of [its] action." *K.E.*, 2016 WL 2897614, at *5 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)); *see also Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 712 (3d Cir. 1993) (citing *Stoneking*, 882 F.2d at 724-25) ("[A] plaintiff must do more than show the defendant could have averted her injury and failed to do so."); *Shadie v. Forte*, No. 3:10-CV-2121, 2011 WL 607447, at *6 (M.D. Pa. 2011) (finding that knowledge of incidents of abuse by a special education director, alone, is not enough to impute his action to a School District under § 1983). "Stated another way . . . a plaintiff must demonstrate that 'policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [the] injury." *M.S. ex rel. Hall v. Susquehanna Township School Dist.*, 43 F.Supp.3d 412, 421 (M.D. Pa. 2014) ("*Susquehanna*") (quoting *Turner v. City of Phila.*, 22 F. Supp. 2d 434, 437 (E.D. Pa. 1988)).

A court may find that a municipal policy exists when a " 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). It is also possible for a court to find the existence of a municipal policy in "the isolated decision of an executive municipal policymaker." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 139 (1988). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (citations omitted). A plaintiff can show a custom by "evidence of knowledge and

acquiescence," *Beck,* 89 F.3d at 971, and must "demonstrate that, through its deliberate conduct, [defendant school] was the 'moving force' behind [his alleged constitutional violation]." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997).

With respect to the first method of establishing municipal liability, at this stage of the instant case, the amended complaint sufficiently alleges that a municipal policy, practice, or custom caused or was the moving force behind the deprivation of Rogers' constitutional injuries. As pleaded, Rogers had an IEP with emotionally- and trauma-based issues, which were well documented and known to the School District since Rogers attended third grade. (Doc. 18, ¶ 110). The IEP provided Rogers with an escort, Jerusalem Strickland, and allowed him to wear headphones. (Doc. 18, ¶¶ 27-28, 41). Under the facts alleges, Rogers's inquires flowed from Defendants' failure to provide his IEP-mandated escort. Therefore, Rogers's assertion that "[p]roviding an escort to Plaintiff was a formal policy and directive of the School District which was followed for a three-month period prior to the incident on June 14th," is sufficient at this stage of litigation to state a plausible Section 1983 cause of action pursuant to the Fourth Amendment under *Monell* against the School District. (Doc. 18, ¶ 120).

With respect to the second method of establishing municipal liability, Rogers has sufficiently alleged that the School District failed to train, supervise, and/or discipline its employees such that it was deliberately indifferent to Rogers' rights to be free from excessive force or equal protection. Inadequate training or supervision may constitute a policy or custom for which a municipality can be held liable under § 1983. *Estate of Roman*, 914 F.3d at 798; *see City of Canton*, 489 U.S. at 387. To establish a municipality's liability on a failure-to-train or failure-to-supervise theory, the plaintiff must first "identify specific acts or omissions of the supervisor that evidence deliberate indifference." *Brown v. Muhlenberg Township*, 269

F.3d 205, 218 (3d Cir. 2001). "A plaintiff sufficiently pleads deliberate indifference by showing that '(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Estate of Roman*, 914 F.3d at 798 (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011)). After establishing the existence of deliberate indifference, the plaintiff must then "persuade the court that there is a relationship between the identified deficiency and the ultimate injury." *Brown*, 269 F.3d at 218.

Here, the Court finds that Rogers has adequately alleged that the School District's failure to train and promulgate policies could be deemed to have caused the alleged deprivation of his rights. Rogers asserts that "[t]he School District's failure to adequately train and supervise its staff and employees regarding the needs of students in its special education and emotional support classes offered at the School District has caused the constitutional violation and amounted to a deliberate indifference to and callousness disregard to the rights of [Rogers]." (Doc. 18, ¶ 130). Under the facts as alleged, Rogers's alleged deprivation of rights could be deemed a direct consequence of the School District not training its staff and employees or systematic practices to prevent such oversights. *See K.M.*, 152 F.Supp.3d at 420 (finding parents of elementary school student, who suffered from autism and sleep apnea and was left on school bus asleep at end of day, adequately alleged *Monell* claim against school district for failure to train and promulgate procedures). Rogers is entitled to conduct discovery of his claims against the School District.

According, Defendants' motion to dismiss is DENIED.

B. Count III – IIED Claim

In the amended complaint, Rogers asserts an IIED claim against Defendants under Pennsylvania law. (Doc. 18, at 19-21). Defendants argue that Rogers's tort claim is barred by the Pennsylvania Political Subdivision Tort Claims Act (the "PSTCA"), 42 Pa. C.S.A. § 8541. (Doc. 23, at 19).

The PSTCA provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S.A. § 8541. There are certain limited exceptions set forth in 42 Pa. C.S.A. § 8542, which provides that local agencies and their employees are liable only for negligent acts falling into one of the following categories: (1) vehicle liability; (2) care, custody or control of personal property; (3) care, custody or control of real property; (4) dangerous conditions of trees, traffic controls, or street lights; (5) dangerous conditions of utility services facilities; (6) dangerous conditions of streets; (7) dangerous conditions of sidewalks; (8) care, custody, or control of animals; and (9) sexual abuse. *See* Pa.C.S. § 8542.

"Municipal employees, including school district employees, are generally immune from liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment." *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006) (citing 42 Pa. C.S. § 8545). However, the statute provides that the *employee* will not be entitled to this immunity if "it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct." *See* 42 Pa. C.S.A. § 8550. The Pennsylvania Supreme Court has recognized willful misconduct as requiring a demanding level of fault. *Sanford*, 456 F.3d at 315. "Willful misconduct has been defined by the Pennsylvania Supreme Court as 'conduct whereby the

actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.' " *Sanford*, 456 F.3d at 315 (quoting *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)). "[E]ven where a public employee acts with a degree of culpability equivalent to 'recklessness,' Pennsylvania law nevertheless affords him immunity." *Bright v. Westmoreland Cty.*, 443 F.3d 276, 287 (3d Cir. 2006) (finding that an allegation of deliberate indifference is not sufficient to avoid PSTCA immunity).

Here, while Rogers admits that none of the eight exceptions to the PSTCA apply, Rogers attempts to take advantage of the "willful misconduct" exception to PSTCA immunity. (Doc. 29, at 18). "The problem with [Rogers]'s argument is that '[w]illful misconduct, however, does not provide an exception to the local agency's immunity.'" *B.D. by & through B.D. v. Cornwall Lebanon Sch. Dist.*, No. 1:20-CV-01944, 2021 WL 1253522, at *19 (M.D. Pa. Apr. 5, 2021) (citing *M.U. v. Downingtown High Sch. East*, 103 F.Supp.3d 612, 630 (E.D. Pa. 2015) (emphasis added); *Palmer v. Bartosh*, 959 A.2d 508, 512 n.3 (Pa. Commw. Ct. 2008) (stating that "[t]he [PSTCA] waives governmental immunity only for certain negligent acts of the agency or its employees; where the employee's conduct is intentional in nature, the local agency retains its governmental immunity")). Here, Lesoine, an employee of the School District who allegedly engaged in willful misconduct, could be individually liable under the PSTCA, but that liability would not extent to the local agency employing him, the School District. *See B.D.*, 2021 WL 1253522, at *19. Therefore, where Rogers has alleged a claim of IIED against the School District, the PSTCA bars Rogers's claim. However, Rogers's claim of IIED against Lesoine, an employee of the School District, is not barred.

Accordingly, Defendants' motion to dismiss Court III of Rogers's amended complaint

is GRANTED IN PART, and Count III against the School District is dismissed with prejudice.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. (Doc. 22). Specifically, Count III of Rogers's amended complaint against the School District is **DISMISSED with prejudice**, and the remaining claims survive. (Doc. 18).

An appropriate Order follows.

BY THE COURT:

Dated: July 6, 2023                          *s/ Karoline Mehalchick*
                                             **KAROLINE MEHALCHICK**
                                             **Chief United States Magistrate Judge**