**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

TAJ K. ROGERS,

                  Plaintiff,

    v.

POCONO MOUNTAIN SCHOOL
DISTRICT, et al.,

                  Defendants.

CIVIL ACTION NO. 3:21-CV-02072

(MEHALCHICK, J.)

**MEMORANDUM**

Plaintiff Taj K. Rogers ("Rogers") initiated this action on December 9, 2021. (Doc. 1). On September 1, 2022, Rogers filed the operative amended complaint against Defendants Pocono Mountain School District ("PMSD") and Kevin Lesoine ("Lesoine") (together, "Defendants"). (Doc. 18). Before the Court is Defendants' motion for summary judgment. (Doc. 58). For the following reasons, Defendants' motion is granted.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the parties' statements of material facts and responses thereto.[1] (Doc. 59-1; Doc. 63). Rogers is a former student of PMSD. (Doc. 59-1, ¶ 1; Doc. 63, ¶ 1). PMSD evaluated Rogers for special needs services in the third grade due to academic concerns. (Doc. 59-1, ¶¶ 8-9; Doc. 63, ¶¶ 8-9). On December 3, 2010, PMSD created a report (the "2010 Report") which evaluated Rogers and concluded that he qualified for special education services due to a learning disability. (Doc. 59-1, ¶¶ 10, 14; Doc. 63, ¶¶ 10,

---

[1] Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. The facts have been taken in the light most favorable to the non-moving party with respect to each motion.

14). PMSD evaluated Rogers again in 2016 and created another report dated September 9, 2016 (the "2016 Report") which concluded that Rogers continued to be eligible for special education services. (Doc. 59-1, ¶¶ 16, 21; Doc. 63, ¶¶ 16, 21). At the time of the 2016 Report, Rogers was a freshman at Pocono Mountain West High School ("West High School"). (Doc. 59-1, ¶ 17; Doc. 63, ¶ 17). PMSD evaluated Rogers again in 2019 and in a November 12, 2019, report (the "2019 Report") a private psychologist diagnosed Rogers with an Emotional Disturbance. (Doc. 59-1, ¶ 22; Doc. 63, ¶ 22).

On February 27, 2017, PMSD conducted a Functional Behavior Assessment of Rogers (the "FBA"), which flagged "[b]ehaviors of concern [including] ineffective transitions, physically aggressive, verbally aggressive, high absenteeism, non-compliance, complains schoolwork is unimportant, and uses profanity towards adults when he does not get his way." (Doc. 59-1, ¶¶ 25-26; Doc. 63, ¶¶ 25-26). The FBA also flagged "[t]riggers [including] school work, adult redirection, and transitions (hallways and bathrooms)." (Doc. 59-1, ¶ 26; Doc. 63, ¶ 26). While Rogers attended West High School, he had an Individualized Education Plan ("IEP") on account of his disability which noted that he "will be escorted throughout the building (classes, office, restroom, etc.)." (Doc. 59-1, ¶ 29; Doc. 63, ¶ 29). PMSD asserts that whether Rogers was supervised or not, he would often get involved in verbal and physical altercations with other students in the hallway, but Rogers denies this. (Doc. 59-1, ¶¶ 31-34; Doc. 63, ¶¶ 31-34).

On December 20, 2017, PMSD held an IEP meeting to discuss Rogers's behaviors and necessary transfer to the therapeutic emotional support classroom (the "TES Classroom") at Pocono Mountain East High School ("East High School"). (Doc. 59-1, ¶ 36; Doc. 63, ¶ 36). The TES Classroom provides a higher level of support for students who require mental health

education and more interventions to address their behaviors. (Doc. 59-1, ¶¶ 50-51; Doc. 63, ¶¶ 50-51). Students in the TES Classroom stay there for the majority of the day. (Doc. 59-1, ¶¶ 50-51; Doc. 63, ¶¶ 50-51). PMSD transferred Rogers to East Highschool and PMSD developed a new IED in March 2018 (the "March 2018 IED") after a IED meeting Rogers and his parent attended. (Doc. 59-1, ¶¶ 39-41; Doc. 63, ¶¶ 39-41). The parties dispute whether the March 2018 IED included a requirement that Rogers be escorted in the hallways with PMSD asserting that it did not and Rogers asserting that it did. (Doc. 59-1, ¶ 42; Doc. 63, ¶ 42). PMSD also asserts that no one reported concerns about Rogers navigating the hallway to East High School, but Rogers disputes this assertion. (Doc. 59-1, ¶ 43; Doc. 63, ¶ 43). The parties also dispute whether the March 2018 IED included Rogers using earbuds with PMSD asserting that Rogers was not permitted to wear earbuds in school under the March 2018 IED and Rogers asserting that he could. (Doc. 59-1, ¶¶ 45-47; Doc. 63, ¶¶ 45-47).

On June 14, 2018, Rogers got into a physical altercation with Lesoine which resulted in PMSD suspending Rogers for two days and referring him to the Pocono Mountain Regional Police Department. (Doc. 59-1, ¶¶ 2-3; Doc. 63, ¶¶ 2-3). That day, while walking to class, Rogers encountered Lesoine, a social studies teacher, and Richard Ludka ("Ludka"), a health and physical education teacher. (Doc. 59-1, ¶¶ 90-92, 94, Doc. 63, ¶¶ 90-92, 94). Neither Ludka nor Lesoine were familiar with Rogers prior to the altercation. (Doc. 59-1, ¶ 96; Doc. 63, ¶ 96). According to PMSD, Lesoine stopped Rogers, told Rogers to remove earbuds he was wearing, Rogers defied this request, Rogers threw two punches at Lesoine, and Rogers ripped off Lesoine's lanyard. (Doc. 59-1, ¶¶ 98, 103). PMSD further asserts that Lesoine told Rogers he would go to jail for assaulting a teacher. (Doc. 59-1, ¶ 103). PMSD characterizes the altercation as Rogers physically assaulting Lesoine. (Doc. 59-1, ¶ 2).

However, Rogers disputes this characterization. (Doc. 63, ¶¶ 2-3). Rogers asserts that East High had him walk through the hallways alone in violation of his typical accommodations, Lesoine accosted Rogers for wearing earbuds even though he was permitted to under his accommodations, Rogers thought Lesoine was a student, Lesoine pushed and restrained Rogers as he tried to leave the hallway, and Lesoine pulled his badge and told Rogers "now you are going to jail." (Doc. 64, at 6-8).

The amended complaint alleges three counts under state and federal law. (Doc. 18). In Count I, Rogers alleges Defendants are liable under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendment. (Doc. 18, ¶¶ 77-107). In Count II, Rogers alleges PMSD is subject to *Monell* liability for improperly training and supervising staff. (Doc. 18, ¶¶ 108-31). In Count III,[2] Rogers alleges Lesoine[3] is liable for intentional infliction of emotional distress. (Doc. 18, ¶¶ 132-39).

On May 20, 2025, Defendants filed a motion for summary judgment. (Doc. 58). On June 3, 2025, Defendants filed a brief in support along with a statement of facts and accompanying exhibits. (Doc. 59; Doc. 59-1). On July 15, 2025, Rogers filed a brief in opposition and answer to Defendants' statement of facts. (Doc. 63; Doc. 64). On July 29, 2025, Defendants filed a reply brief. (Doc. 65). Accordingly, this matter is ripe and ready for disposition.

---

[2] The third count is labeled Count VI in the amended complaint because the original complaint had nine counts and the third count in the amended complaint was the sixth count in the original complaint. (Doc. 1; Doc. 18). Because there are only three counts before the Court, the Court will refer to Count VI as Count III.

[3] The amended complaint original brought Count III against both Defendants, however, the Court previously dismissed Count III against PMSD. (Doc. 31, at 20-22).

## II.    LEGAL STANDARDS

### A.  MOTIONS FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1.

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249.

Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like, to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.,* 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (nonprecedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment"); *Nat'l Labor Rel. Bd. v. FES,* 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony. . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment").

B. 42 U.S.C. Section 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute

states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

### III.  DISCUSSION

Defendants aver that they are entitled to summary judgment on Count I because no reasonable jury could conclude that Lesoine subjected Rogers to an unconstitutional seizure. (Doc. 59, at 13-16). Defendants further move for summary judgment on Count II because *Monell* liability claims require an underlying constitutional violation, and according to Defendants, no reasonable jury could conclude that there was an underlying constitutional violation in this case. (Doc. 59, at 19). Finally, Defendants contend that they are entitled to summary judgment on Count III because Lesoine is immune from state-tort liability under the Pennsylvania Political Subdivision Tort Claims Act. (Doc. 59, at 26-27). The Court will assess each argument in turn.

A. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT I.

### i. Defendants are not liable under Section 1983 for violations of the Fourth Amendment.

In Count I, Rogers avers that Defendants are liable under Section 1983 for violations of the Fourth and Fourteenth Amendments. (Doc. 18, ¶¶ 77-107). Defendants aver that they are entitled to summary judgment on Count I because there is no evidence in the record that Lesoine seized Rogers and that the record shows that Rogers assaulted Lesoine. (Doc. 59, at 13-16). According to Defendants, even if Lesoine made physical contact with Rogers, public-school officials momentarily using physical force in reaction to an unruly student does not constitute a Fourth Amendment seizure. (Doc. 59, at 13-16). Rogers counters that there is a genuine dispute of material fact regarding whether Lesoine's conduct constituted a Fourth Amendment seizure because Rogers testified that Lesoine physically restrained him and Rogers reasonably believed he was not allowed to leave. (Doc. 64, at 13-15).

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure occurs where a government official, through physical force or show of authority, restricts the liberty of an individual to leave or walk away. *See United States v. Crandell*, 554 F.3d 79, 84 (3d Cir. 2009); *see also Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002). In *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 147 (3d Cir. 2005), the Third Circuit held that public school officials are subject to the Fourth Amendment and may be held liable under Section 1983 for unreasonable searches and seizures. The Third Circuit held that to evaluate whether a public school official violated the Fourth Amendment, a court must consider 1) whether the official, through use of force or authority, made it so that a reasonable person subject to that force or authority would feel as though they were unable to leave and 2) whether the public-school official's actions were

8

reasonable under the circumstances. *Shuman*, 422 F.3d at 147. "[W]hat is reasonable depends on the context within which a search [or seizure] takes place . . . balancing the need to search against the invasion which the search [or seizure] entails." *Shuman*, 422 F.3d at 147 (citations and internal quotations omitted).

The *Shuman* decision, however, did not overturn the Third Circuit's previous ruling in *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 171 (3d Cir. 2001). In *Gottlieb*, the Third Circuit held that public-school officials who briefly use physical force on unruly students are not subject to the same standards governing seizures as other government officials such as police officers. 272 F.3d at 171 (stating "[c]ourts have recognized that public schools are in a 'unique constitutional position,' because '[o]nce under the control of the school, students' movement and location are subject to the ordering and direction of teachers and administrators'" (quoting *Wallace by Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1013 (7th Cir. 1995)). "[T]he 'momentary use of physical force by a teacher in reaction to a disruptive or unruly student does not effect a 'seizure' of the student under the Fourth Amendment,' and therefore 'is a scenario to which the Fourth Amendment does not textually or historically apply.'" *Gottlieb*, 272 F.3d at 172 (quoting *Kurilla v. Callahan*, 68 F. Supp. 2d 556, 563 (M.D. Pa. 1999)). Instead, courts must analyze claims involving brief uses of force by public-school officials under a Fourteenth Amendment "shocks the conscious" standard. *Gottlieb*, 272 F.3d at 170-72; *see MG ex rel. LG v. Caldwell-W. Caldwell Bd. of Educ.*, 804 F. Supp. 2d 305, 317 (D.N.J. 2011) (noting that excessive force claims by public school officials are generally analyzed as substantive due process claims rather than Fourth Amendment claims).

The differences between the facts in *Shuman* and the facts in *Gottlieb* illustrate when a court should apply the *Shuman* standard and when a court should apply the *Gottlieb* standard.

9

*Shuman* involved a public-school official instructing a student to "remain in [a] conference room . . . for several hours and [the student] was not free to leave." 422 F.3d at 147. The Third Circuit determined that such an extended detention constituted a seizure and must be analyzed under a Fourth Amendment reasonableness standard. *Shuman*, 422 F.3d at 147; *see Est. of Massey v. City of Philadelphia*, 118 F. Supp. 3d 679, 688 (E.D. Pa. 2015) (analyzing a claim in which a school did not allow a student to leave from morning until late afternoon despite the student having an asthma attack and needing medical care under the *Shuman* standard). *Gottlieb*, on the other hand, involved a teacher shoving a student into a door after the student began arguing with him and acting unruly. 272 F.3d at 171-72. The Third Circuit found that the teacher's brief use of force did not constitute a seizure and thus, did not violate the Fourth Amendment. *Gottlieb*, 272 F.3d at 172. A public-school official's brief use of force in response to an uncooperative or misbehaving student is analyzed under the *Gottlieb* standard, even where the use of force restricts movement or prevents a student from leaving. *See MG*, 804 F. Supp. 2d at 317 (analyzing a claim where a teacher briefly restrained a special needs student by bear hugging him under the *Gottlieb* standard rather than under the Fourth Amendment reasonableness standard); *see also Schmidt v. Freeland*, No. 1:11-CV-1782, 2013 WL 4083761, at *8 (M.D. Pa. Aug. 13, 2013) (distinguishing *Shuman*, and applying the *Gottlieb* standard where a public school official grabbed a student's arm to stop her from leaving a classroom and questioned her, reasoning the "[d]efendants' questioning of [the student] was relatively brief" compared to the facts in *Shuman* in which public-school officials detained a student "for nearly four hours").

Defendants aver that there is no evidence in the record from which a reasonable jury could conclude that Lesoine seized Rogers under the heightened standard for public school

10

teachers and assert that the Court must apply the *Gottlieb* standard to grant them summary judgment. (Doc. 59, at 13-16). Rogers avers that there is a genuine dispute of material fact regarding whether a seizure occurred based on Rogers's testimony. (Doc. 64, at 13-15). The Court finds that even if the Court accepts all of Rogers's testimony as true and makes all inferences in favor of Rogers, the *Gottlieb* standard applies and under that standard, no reasonable jury could conclude that a seizure occurred.[4]

Rogers testified that before the altercation between him and Lesoine began, Lesoine instructed him to remove his earbuds. (Doc. 59-4, at 11). According to Rogers, Rogers began to protest Lesoine's request and argue with him. (Doc. 59-4, at 11). Rogers's testimony describes the physical contact between him and Lesoine that followed as Lesoine "pushing [Rogers] back," Rogers "slapping [Lesoine's] hands down," and Rogers and Lesoine "playing tug of war for the door." (Doc. 59-4, at 12-15). At one point in his deposition, Rogers described the altercation between him and Lesoine as "fighting" but clarified that they were not fighting as in hitting each other and stated Lesoine "never slapped me or hit me or punched me. He was just trying to stop me from trying to leave." (Doc. 59-4, at 13, 15). Rogers further testified that Lesoine followed him and attempted to cut off his movement. (Doc. 59-4, at 12-15). Rogers also stated that after the altercation, he went to class. (Doc. 59-4, at 13).

It is undisputed that at the time of the altercation, Rogers was a student walking to class, and Lesoine was a teacher. (Doc. 59-1, ¶¶ 90-91; Doc. 63, ¶¶ 90-91). East High School

---

[4] Rogers also avers that the Court should deny summary judgment because Defendants did not provide Rogers with a video Daniel Higgins, East High's principal, testified shows that Lesoine did not touch Rogers. (Doc. 64, at 14-15). As discussed above, the Court finds that Defendants are entitled to summary judgment regardless of whether Lesoine made physical contact with Rogers in the way that Rogers testified he did so this factual dispute is inconsequential.

Principal Daniel Higgins ("Higgins") testified that students are not allowed to wear headphones in school, and Rogers does not include any evidence which contradicts Higgins's assertions regarding this policy. (Doc. 59-8, at 15). Rogers only presents his own testimony that he was told he may wear headphones at school and that he typically walked to class with an escort as part of his accommodations. (Doc. 59-1, ¶ 96; Doc. 63, ¶ 96). However, it is undisputed that at the time of the altercation, Lesoine did not know who Rogers was and thus wouldn't have known about Rogers's accommodations. (Doc. 59-1, ¶ 96; Doc. 63, ¶ 96). According to Rogers's own testimony, Rogers acted defiantly and began to argue with Lesoine after Lesoine told him to remove his headphones. (Doc. 59-4, at 11). Rogers also testified that after the interaction, he went to class; and thus, Lesoine did not detain him for an extended period of time. (Doc. 59-4, at 13). These facts are consistent with cases applying the *Gottlieb* standard and not the *Shuman* standard because Lesoine's actions only involved a brief use of force in response to Rogers arguing with Lesoine, and the entire altercation only lasted for a few moments rather than a few hours.[5] *Compare Gottlieb*, 272 F.3d at 172 (finding that a teacher shoving an unruly student did not constitute a seizure); *and MG*, 804 F. Supp. 2d at 317 (finding a teacher briefly bear hugging a disruptive special needs student should be analyzed under *Gottlieb*); *and Schmidt*, 2013 WL 4083761, at *8 (finding a teacher grabbing a student's arm and questioning them for minutes rather than hours did not constitute a

---

[5] The parties dispute whether Rogers believed Lesoine was another student at the time of the incident. (Doc. 59-1, ¶ 95; Doc. 63, ¶ 95). This factual dispute is inconsequential because there is no reasoning in *Gottlieb* which suggests that the unique standard public-school officials are subject to is dependent on whether the student believes that a defendant is a school official. 272 F.3d at 171-72. Rather, *Gottlieb* provides that public-school officials are in a unique constitutional position because the nature of public schools require teachers to have the authority to restrict the liberty of students in a way that "would be unacceptable if 'exercised over free adults.'" 272 F.3d at 171-72 (citing *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 655 (1995)).

seizure); *with Shuman*, 422 F.3d at 147 (finding that school officials detaining a student for hours constituted a seizure); *and Est. of Massey*, 118 F. Supp. 3d at 688 (finding that a school not letting a student leave to seek medical attention for hours constituted a seizure). Accordingly, no reasonable jury could conclude that a seizure occurred, and the altercation between Lesoine and Rogers must be analyzed under a Fourteenth Amendment standard rather than a Fourth Amendment standard. *See Gottlieb*, 272 F.3d at 172; *see MG*, 804 F. Supp. 2d at 317; *see also Schmidt*, 2013 WL 4083761, at *8.

### ii. Defendants are not liable under Section 1983 for violations of the Fourteenth Amendment.

Rogers does not make any arguments as to why his claims survive summary judgment under *Gottlieb*'s Fourteenth Amendment standard. (Doc. 59, at 13-16). However, Count I is brought as a Section 1983 challenge based on both Fourth and Fourteenth Amendment violations. (Doc. 18, ¶¶ 77-107). Under the *Gottlieb* Fourteenth Amendment standard, a public-school official's brief use of force only violates the Fourteenth Amendment if it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense. Thus, conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.'" *Gottlieb*, 272 F.3d at 172 (citations and internal quotations omitted). Courts in the Third Circuit evaluate four elements when determining whether a school official's use of force shocks the conscious:

> [1] Was there a pedagogical justification for the use of force?; [2] Was the force utilized excessive to meet the legitimate objective in this situation?; [3] Was the force applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?; and [4] Was there a serious injury?

> *Gottlieb*, 272 F.3d at 173; *see Betz v. Satteson*, 259 F. Supp. 3d 132, 177 (M.D. Pa.), *aff'd*, 715 F. App'x 213 (3d Cir. 2017).

13

Under this standard, summary judgment is inappropriate where the plaintiff presents evidence that a public-school official's use of force was not part of "a good faith effort to maintain discipline" but rather the school official used force "for the purpose of causing harm." *Betz*, 259 F. Supp. 3d at 183; *see Hamilton v. Spriggle*, 965 F. Supp. 2d 550, 583 (M.D. Pa. 2013) (denying summary judgment where a plaintiff presented evidence that public-school officials repeatedly struck a mentally challenged child over the course of a year because a reasonable jury could conclude that the uses of force were purely intended to harm the child); *see also Vicky M. v. Ne. Educ. Intermediate Unit*, 689 F. Supp. 2d 721, 731 (M.D. Pa. 2009) (denying summary judgment where a plaintiff presented evidence that a public-school official tied a special needs student to a chair with bungee cords, let the tied up student fall to the ground, left the student on the floor restrained for several minutes, grabbed them by the back of the neck, slapped them, and stepped on their feet). However, summary judgment in favor of a school district or public-school official is appropriate where the plaintiff only presents evidence that a public-school official used brief physical force such as pushing a student in order to enforce school rules or used minor force without the intent to harm the student. *See Gottlieb*, 272 F.3d at 175 (finding that a public-school official was entitled to summary judgment because the plaintiff only presented evidence that the public-school official shoved an unruly student); *see also MG*, 804 F. Supp. 2d at 317 (granting summary judgment in favor of a school district where the plaintiff presented evidence that a teacher restrained an unruly special needs student by temporarily putting him a bear hug because there was a "pedagogical reason" for the use of force); *see also Betz*, 259 F. Supp. 3d at 183 (granting summary judgment in favor of a public-school official where a plaintiff only presented evidence that a public-school official pushed a student plaintiff and blocked a door to prevent him from leaving).

14

The record does not contain a genuine dispute of fact regarding whether Lesoine's actions shock the conscious because Rogers's evidence is analogous to evidence in cases in which Courts granted school district defendants summary judgment. *See Gottlieb*, 272 F.3d at 175; *see also Betz*, 259 F. Supp. 3d at 183. Accepting Rogers's testimony as true, no reasonable jury could determine that Lesoine's behavior violated Rogers's Fourteenth Amendment rights because at most, Lesoine pushed Rogers and blocked his path while dealing with Rogers ignoring his requests and arguing with him. (Doc. 59-1, ¶¶ 90-91; Doc. 59-4, at 11-15; Doc. 63, ¶¶ 90-91); *see Gottlieb*, 272 F.3d at 175 (finding that a teacher pushing a student did not shock the conscious); *see also Betz*, 259 F. Supp. 3d at 183 (finding a teacher pushing and blocking the movements of a special needs student while enforcing school rules did not shock the conscious); *see also MG*, 804 F. Supp. 2d at 317 (finding a teacher bear hugging a special needs student did not shock the conscious). Accordingly, there are no genuine disputes of fact regarding Count I and the Court **GRANTS** Defendants' motion for summary judgment on Count I. (Doc. 58).

B.  PMSD IS ENTITLED TO SUMMARY JUDGMENT ON COUNT II.

In Count II, Rogers avers that PMSD is subject to *Monell* liability for failure to train and properly supervise its employees and administrative staff. (Doc. 18, ¶¶ 108-31). Defendants aver that *Monell* liability claims require an underlying constitutional violation, and PMSD is entitled to summary judgment on Count II because Defendants are entitled to summary judgment on Count I, the only underlying constitutional claim in this action. (Doc. 59, at 59). Rogers counters that a reasonable jury could conclude that PMSD failed to properly train and supervise its staff regarding Rogers's accommodations and thus, PMSD is subject to *Monell* liability. (Doc. 64, at 16-20).

15

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978), the Supreme Court held that municipal governments cannot be held liable for constitutional violations under a theory of *respondeat superior*, but rather, can only be held liable under Section 1983 where a municipal employee or entity is executing a municipal "government's policy or custom." In other words, under *Monell*, a municipal defendant can only be held liable where "the government unit itself supported a violation of constitutional rights." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). School districts are municipal entities subject to *Monell*. *See Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 174 (3d Cir. 2017), *as amended* (Sept. 22, 2017) (noting that "[l]ocal governments, such as school districts, cannot be held liable under § 1983 for the acts of their employees" and that claims against school districts must be analyzed through *Monell*). However, a school district defendant, or any other municipal defendant, cannot be held liable under *Monell* where the defendant is entitled to summary judgment on the plaintiff's underlying constitutional claims or the underlying constitutional claims are otherwise dismissed. *See Mulholland v. Gov't Cnty. of Berks*, Pa., 706 F.3d 227, 238 n.15 (3d Cir. 2013) (stating "[i]t is well-settled that, if there is no [underlying constitutional] violation in the first place, there can be no derivative [*Monell*] municipal claim"); *see also Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 644 F. App'x 172, 178 (3d Cir. 2016) (nonprecedential) (stating "[a]ppellants cannot recover from the School District under Section 1983 for a [*Monell*] failure to train [claim] because there was no underlying constitutional violation"); *see also Bhatnagar v. Meyer*, No. 22-2848, 2023 WL 5378834, at *3 (3d Cir. Aug. 22, 2023) (nonprecedential) (stating "because [plaintiff] lacks an underlying claim of a constitutional violation, there cannot be a *Monell* claim").

Here, for the reasons discussed in Section III.A, *supra*, Defendants are entitled to summary judgment on Rogers's Fourth and Fourteenth Amendment claims. Because Defendants are entitled to summary judgment on Rogers's underlying constitutional claims, PMSD is also entitled to summary judgment on Rogers's *Monell* claim. *See Mulholland*, 706 F.3d at 238 n.15; *see also Bridges*, 644 F. App'x at 178; *see also Bhatnagar*, 2023 WL 5378834, at *3. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on Count II. (Doc. 58).

C.  LESOINE IS ENTITLED TO SUMMARY JUDGMENT ON COUNT III.

Finally, in Count III, Rogers alleges that Lesoine is liable for intentional infliction of emotional distress. (Doc. 18, ¶¶ 132-39). Defendants aver that Lesoine is entitled to summary judgment on Count III because Lesoine is immune from state-tort liability under the Pennsylvania Political Subdivision Tort Claims Act (the "PSTCA"). (Doc. 59, at 26-27). According to Defendants, under the PSTCA, a municipal employee acting within the scope of his employment is only liable for state tort claims to the extent the municipality may be held liable or if the employee engages in willful misconduct. (Doc. 59, at 26-27). Defendants posit that PMSD is immune and there is no evidence that Lesoine engaged in willful misconduct. (Doc. 59, at 26-27). Rogers counters that there is a genuine dispute of material fact regarding whether Lesoine engaged in willful misconduct based on Rogers's testimony. (Doc. 64, at 21-22).

Under the PTSCA, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. § 8541. The PTSCA also provides that "[a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused

17

by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter." 42 Pa. C.S. § 8545. 42 Pa. C.S. § 8542(b) lists nine exceptions to the PTSCA for torts involving 1) vehicle liability, 2) care, custody or control of personal property, 3) real property, 4) trees, traffic controls and street lighting, 5) utility service facilities, 6) streets, 7) sidewalks, 8) care, custody, or control of animals, and 9) sexual abuse. The PTSCA also has an exception for "acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct." 42 Pa. C.S. § 8542(a)(2). The parties only dispute whether the willful misconduct exception applies. (Doc. 59, at 26-27; Doc. 64, at 21-22).

"[W]illful misconduct is a demanding level of fault." *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006). To establish willful misconduct, the plaintiff must present evidence regarding the specific intent of the municipal employee, and a reasonable jury must be able to conclude from that evidence that the employee intended to "bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." *Sanford*, 456 F.3d at 315 (finding a school district employee defendant was entitled to summary judgment under the PTSCA because the plaintiff failed to present evidence from which a reasonable jury could conclude that a school district employee acted intentionally); *see Nace v. Pennridge Sch. Dist.*, 744 F. App'x 58, 67 (3d Cir. 2018) (nonprecedential) (finding the same); *see also Anderson v. Abington Heights Sch. Dist.*, No. 3:12-CV-2486, 2017 WL 6327572, at *22 (M.D. Pa. Dec. 11, 2017), *aff'd*, 779 F. App'x 904 (3d Cir. 2019) (same). Where a plaintiff does not present such evidence, the municipal employee defendant is entitled to summary judgment on the issue of PTSCA immunity and all state tort

18

claims against them. *See Sanford*, 456 F.3d at 315; *see also Nace*, 744 F. App'x at 67; *see also Anderson*, 2017 WL 6327572, at *22.

Defendants aver that no reasonable jury could conclude that Lesoine engaged in "willful misconduct" because the record shows Lesoine was simply enforcing school rules regarding headphones and unruly students at the time of his altercation with Rogers. (Doc. 59, at 26-27). Rogers counters that whether Lesoine was enforcing school rules is a question of disputed fact because Rogers testified that he was wearing headphones in accordance with his accommodations, the incident occurred because the school failed to properly follow his IED, and Lesoine accosted him and threatened him with jail time even though Rogers was following school rules. (Doc. 64, at 22). However, even if the Court accepts Rogers's testimony as true and makes all inferences in Rogers's favor, a reasonable jury cannot determine that Lesoine engaged in willful misconduct because Rogers does not present any evidence regarding Lesoine's intent. *See Sanford*, 456 F.3d at 315; *see also Nace*, 744 F. App'x at 67; *see also Anderson*, 2017 WL 6327572, at *22.

It is undisputed that Lesoine did not know who Rogers was at the time of the altercation and thus, Lesoine would not have recognized Rogers as a student with accommodations. (Doc. 59-1, ¶ 96; Doc. 63, ¶ 96). Rogers presents his own testimony that he believed he had accommodations allowing him to wear headphones and requiring him to walk around the halls with an escort. (Doc. 59-4, at 9-10). However, Rogers does not present any evidence countering Defendants' evidence that students are generally not allowed to walk around the school with headphones or that indicates that Lesoine knew about Rogers's accommodations. (Doc. 59-8, at 15). Accordingly, Lesoine is entitled to summary judgment on the issue of PTSCA immunity because there is no evidence in the record indicating that

he acted intentionally. *See Sanford*, 456 F.3d at 315; *see also Nace,* 744 F. App'x at 67; *see also Anderson*, 2017 WL 6327572, at *22. Defendants' motion for summary judgment on Count III is **GRANTED**. (Doc. 58).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED**. (Doc. 58). The Clerk of Court is directed to grant judgment in favor of Defendants on all counts and to close this case.

An appropriate Order follows.

**BY THE COURT:**

**Dated: March 23, 2026**                    *s/ Karoline Mehalchick*
                                                          **KAROLINE MEHALCHICK**
                                                          **United States District Judge**